By the Court. Woodruff, J.
The question argued at some length before us on this appeal is, whether the Court will interfere by injunction to restrain a breach of a contract for personal services of the description mentioned in the complaint.
Although it is conceded that the Court cannot, by its decree, compel an artist to employ his skill in his art for the plaintiffs’ benefit, it is nevertheless insisted, that where the contracting artist has agreed that he will not work for any other person, the Court will do all that it can to enforce performance by enjoining the artist not to work for any other than the plaintiffs. Various authorities are referred to, as showing the validity of such an agreement, and in support of the authority and duty of the Court to interfere by injunction. The case of Lumley v. Wagner, (1 De Gex, McNaughten & Gordon, 604; 13 Law & Eq. R. 252,) is mainly relied upon, with the cases therein cited.
On the other hand, it is insisted that an injunction should not issue to restrain a defendant from rendering services to another, when it is clear that the court cannot, by its decree, compel a performance of the affirmative covenant to work for the plaintiffs. That the injunction is only granted as auxiliary to the execution of the decree, and where the decree can itself be enforced; and that the Court will not attempt to compel the specific performance of an agreement to render personal services, but will leave the party; complaining of a breach, to his remedy at law. And to these points, Morris v. Coleman (18 Ves. 437), Clarke v. Price (2 Wils. Ch’y R. 157), Kemble v. Kean (6 Sim. R. 333), and Baldwin v. Soc. for Diffusing Useful Knowledge (9 Sim. R. 393)—in England: and De Rivafinoli v. Corsetti (9 Paige, 264), Hamblin v. *232 Dinneford (2 Edw. Ch. R. 529, and Sanquirico v. Benedetti (1 Barb. S. C. R. 315)—in this State, are cited.
Although the precedents in this State, so often as the question has arisen here, seem to be against the plaintiff, we do not think it necessary, and it is therefore, in this stage of the cause, perhaps improper to decide this question.
The appeal may be disposed of upon the grounds which appear in substance to have governed the decision of the motion at the Special Term.
The motion is for an injunction pendente lite. It is a harsh and, may be, an oppressive exercise of the power of the Court, operating to deprive the defendant of the means of gaining a subsistence, and of the ability to support his family, while the litigation is going on, which may continue many months, and in a case in which the right of the plaintiffs is denied.
The frequency of applications for injunctions, pendente lite, and, I may add, the facility with which they are obtained, may properly induce us to recur to some familiar rules which ought to govern the Court in the exercise of its summary and, in a degree, arbitrary power; it should be guarded by a most cautious discretion, forbidding its exercise when it will operate oppressively or work immediate injury, or where the right of the plaintiff is doubtful, or the facts are not clearly ascertained. It has been well said, that “ there is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of Equity, which ought never to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, * * * and it will not be awarded in doubtful cases, nor in new ones not coming within well-established principles.” (Mr. Justice Baldwin in 1 Bald. Cir. Ct. R. 218; note to 2 Story’s Eq. Jur. § 959 b.)
These views should govern the Court on a final hearing, and with all the proofs necessary to a final decree before them. Much more should they control us on an application for an injunction pendente lite, while the grounds of the application are controverted, and the facts involved in serious doubt. Even in the case relied upon by the plaintiffs’ counsel it will be seen, *233 by a recurrence to the case then before the Court, it Was deemed that there was no doubt of the rights of the parties upon the evidence.
However, then, the present case may hereafter appear, when the proofs shall be produced upon the trial, and whether the Court may or may not be brought to conclude that an injunction may be issued to restrain the breach of the defendant’s covenant not to work for any other than the plaintiffs, it must suffice for the purposes of this appeal to say, that the papers before us do not establish such a case as warrants the granting of this summary and harsh remedy in the present stage of the action. Neither the right nor the facts are clearly established in the plaintiffs’ favor.
Without entering into any minute detail in regard to the various matters wherein the affidavits are conflicting) we think that if the balance of evidence does not establish, it creates a strong probability, that the contract with Mayer was itself a fraud upon him, in holding out that the plaintiffs had a house or firm in New York, and were carrying on business here, and that he was to have employment with them in such firm, when, in fact, no such firm existed here, and Fredericks was already in partnership here with another, (the defendant, Gurney,) and therefore that the agreement did not bind Mayer at all. And if it be suggested, that, by the contract, Mayer placed himself at the disposal of the plaintiff Fredericks, the answer is furnished by the contract itself which limits that disposal to working for the plaintiffs’ house in New York. And if the acts of the parties, Fredericks and Mayer, may be regarded as showing that working for Gurney and Fredericks was within the purview of the contract, as mutually understood and intended, it is answered, plausibly, at least, that Gurney & Fredericks, being the only house in New York in which either of the plaintiffs had any interest, placing the defendant, Mayer, with them, maybe regarded as a practical exposition of the contract, designating that house as the house in New York for whom he was to work in New York; and therefore, that upon the dissolution of that firm, the obligation ceased, because he could work for them no longer. This exposition of the contract finds strong support in the paper signed by Fredericks himself, in which the contract is distinctly recognised as a *234 contract between Mayer and Gurney & Fredericks, very clearly indicating, that, whether in their names or not, it was a contract for their benefit.
The doubts in favor of the defendant, Gurney, are even greater. It is not denied that the "firm of Gurney & Fredericks existed long before the contracts with the artists were made; that Gurney advanced the five hundred dollars to secure the employment of the artists; that he paid their expenses to this country; that they entered into the employment of the firm and so continued until the dissolution, and were paid by the firm. Although there is contradiction on the subject, we are not satisfied that the making of these contracts with the artists, in other names than that of the firm, was with his knowledge or assent. H, in this respect, there was not a purposed deception, it at least appears that the contracts were for the benefit of the firm, and were so treated and so regarded, by both Fredericks and Gurney, until their interests became hostile, and Fredericks was about to establish a rival business. The inference from the papers before us is by no means slight nor feeble, that the whole enterprise of bringing the artists to this country originated with Gurney & Fredericks ; and, the whole advance being made by Gurney on their account, with the expenses resulting from the enterprise, that the engagement with the artists, as between Gurney and Fredericks, was for the sole benefit of that firm, and therefore subject to the usual incidents of a dissolution of the firm, in which case Fredericks could not equitably claim any exclusive interest in the contracts, or sole control over the employees.
I am aware that there are many statements, on the behalf of the plaintiffs, that are relied upon as weakening the inferences above intimated, and that there are many particulars in which there is a conflict of evidence; but the general result, in its influence upon our minds, is sufficiently indicated by what has been said. In this statement, it is not designed to say that these views, so favorable to the defendants, are decisively established. It is enough to say that upon the merits, the plaintiffs’ case is involved in great doubt, and, I may add, that the scale seems to incline in the defendants’ favor.
After what has been suggested, in regard to the propriety of granting an injunction under such circumstances, it only remains *235 to add, that we think the discretion of the Court at special term was wisely exercised, and that the order appealed from must be affirmed.
Order affirmed;