EDGAR BRONK, RESPONDENT, *v.* JOHN RILEY, HUGH REILLY AND JOHN BATTERSBY, COMMISSIONERS OF THE ALBANY PENITENTIARY, AND JOHN McEWEN, AS SUPERINTENDENT OF THE ALBANY PENITENTIARY, APPELLANTS.

*Preliminary injunctions — when they should not be granted except with great caution — an action to compel a person to continue a business, which he agreed to carry on for a fixed term, cannot be maintained — a preliminary injunction should not be granted requiring a person to do an act which may finally be determined to be illegal.*

In an action, brought against the Commissioners of the Albany Penitentiary and the Superintendent of that institution, the complaint alleged that, in February, 1888, the plaintiff entered into a contract with the superintendent, approved by the commissioners, by which the superintendent employed the plaintiff as a manager and agent to oversee the manufacture of brushes in the penitentiary, and the sale thereof, for which service he was to receive ten per cent on the sale, and was to guarantee the collections. The superintendent was to hire from the plaintiff the necessary machinery at a specified price, and the agreement was to last for a year.

That, in August, 1888, the commissioners passed a resolution notifying the plaintiff that on and after September first they would cease the further manufacture of brushes and would not recognize the contract as in force, claiming that they were required so to do by the passage of chapter 586 of 1888, and were entitled to do so under a provision contained in the contract, to the effect that if the legislature should pass any act abolishing the use of machinery in said prison they might notify the plaintiff and the contract should cease.

In this action, commenced on August 15, 1888, the plaintiff moved for and obtained a preliminary injunction order forbidding the defendants from interfering in the performance of his contract, and from stopping the use of the plaintiff's plant or machinery, or the employment of convicts under such contract, and requiring the defendants to carry out and perform the said contract.

*Held,* that while preliminary injunctions, which only prevent the defendants from doing an act which would render the final judgment ineffectual, may be granted with some readiness; those which, in effect, determine the litigation and give the same relief which is expected to be obtained by the judgment should be granted with great caution and only when necessity requires.

That, as this action was brought by an agent to compel his employers to carry on the contract with him, and to continue a business in which he was to receive a percentage of the sales, it was practically an action for the specific performance of a contract for personal services.

That although, in regard to such contracts, when the services are to be done by a person having "special, unique or extraordinary" qualifications, as where a great actor or singer has agreed to perform for a party at a certain place, courts of equity have assumed jurisdiction, the injunctions, when granted, have only restrained the person who was to render personal services from performing elsewhere or engaging in other business, and have not attempted to compel him to continue the business named in the contract.

That if, in this case, this plaintiff had engaged in some other brush business, and the defendants had brought an action to restrain him from carrying on such other business, then the situation of the parties would have been similar to that of the parties in the cases cited and relied on by the plaintiff; but even such an action would not be within the decisions made in these cases, as the services which the plaintiff had contracted to render were not done by a person having "special, unique or extraordinary qualifications."

That the court was not aware of any case where there has been a contract for personal services, and where the court has by injunction compelled the employer to continue a business in which he had engaged the services of the plaintiff.

That if the plaintiff performed, or offered to perform, his contract on his part, his remedy by an action for damages was complete, because if the contract were continued through the year the plaintiff would have received a certain amount of money, and he could recover that same amount of money in an action at law for a breach of the contract.

That the claim made by the plaintiff that it would be impossible to prove what the amount of sales would be, could not be maintained as the capacity of the working power of defendants would show how many brushes they might have made,

and the market-price would show what the brushes would sell for; and that it would not lie with the party which had broken its contract to say that perhaps the plaintiff might not have found a market for the brushes.

That a claim of the plaintiff that there was no legal remedy, because there was no person who could be sued at law upon this contract, took away the plaintiff's ground of action altogether, for the reason that, if these defendants made no valid contract, then there was nothing to enforce by injunction; and if they made a valid contract, an action at law must lie, as some one must be the party on the other side of the contract.

That, as a serious question had arisen as to whether the defendants could, since the passage of the act of 1888, lawfully continue the use of machinery, the court would not use the forceable remedy of injunction and require them to do an act which it might finally be determined they had no right to do.

That the order should be reversed.

APPEAL from an order made at the Albany Special Term restraining the defendants from interfering in any manner with the plaintiff in his performance of a contract for the manufacture of brushes by machinery in the Albany Penitentiary, which order was entered in the Albany county clerk's office September 25, 1888.

*D. Cady Herrick,* for the appellants.

*Edwin Countryman,* for the respondent.

LEARNED, P. J.:

This is an appeal from a preliminary injunction order. The order forbids defendants from interfering with the plaintiff in the performance of his contract; from stopping the use of plaintiff's plant or machinery, or the employment of convicts under said contract, and requires the defendants to carry out and perform the said contract. It is, then, what is called a mandatory injunction, requiring the defendants to perform a contract into which they entered with the plaintiff. The defendants are the Commissioners of the Albany Penitentiary and the Superintendent of that institution. In February, 1888, the Superintendent and the plaintiff entered into a written contract, approved by the Commissioners. By this, the Superintendent employed plaintiff as manager and agent to oversee the manufacture of brushes in the penitentiary and the sales thereof, for which service he was to receive ten per cent on the sales. He was to guaranty collections. The Superintendent was to hire from the plaintiff the necessary machinery at a specified price. The agreement was to last for a year.

The complaint charges that in August, 1888, the commissioners resolved to notify the plaintiff that on and after September first, they would cease the further manufacture, and would not recognize the contract as in force. This they did, as claimed, under chapter 586, Laws of 1888, and under a provision in the contract that if the legislature should pass any act abolishing the use of machinery in said prison, they might notify the plaintiff and the contract should cease. Thereupon, this action was commenced, the fifteenth of August, to compel the defendants to proceed with the contract, and this preliminary injunction was granted August twenty-eighth. In the opinion of the learned justice, the act referred to, which applies to "the penal institutions of the State," does not embrace in those words the Albany Penitentiary. No answer has yet been put in. The motion was granted upon affidavits.

A question arises, before considering the construction of the statute, that is, whether, in a case like the present, such an injunction should be granted. Preliminary injunctions which only prevent the defendant from doing an act which would render the final judgment ineffectual, may be granted with some readiness; but those which, in effect, determine the litigation and give the same relief which it is expected to obtain by the judgment, should be granted with great caution, and only when necessity requires.

This action is by an agent to compel his employers to carry out the contract with him, and to continue a business in which he is to receive a percentage of the sales. While taking the form of an injunction the remedy is practically an order for specific performance. And it is remarked by Mr. Pomeroy that the jurisdiction to grant injunctions to restrain a breach of contract is substantially coincident with the jurisdiction to compel specific performance. And, further, that the American courts have tended to restrict rather than enlarge this jurisdiction. (Pom. Eq., § 1341 and note.) This was a contract by plaintiff for personal services. Now, in regard to such contracts, when they are "special, unique and extraordinary," or when the services are to be done by a person "having special, unique or extraordinary qualifications, as, for example, by an eminent actor, singer, artist and the like," then courts of equity have assumed jurisdiction. (Pom. Eq., § 1343.) The counsel for the plaintiff in this case, citing from that section, says that the rule

is established in England that the violation of such contracts may be restrained by injunction.

The English cases are of this character: Where an actor, singer or the like has agreed to perform for a party at a certain place, such actor, singer or the like has been restrained from performing elsewhere. (*Lumley* v. *Wagner*, 1 De G., M. & G., 604; *Montague* v. *Flockton*, L. R., 16 Eq., 189.) So in the case of *Ward* v. *Beeton* (L. R., 19 Eq., 207). The plaintiff had purchased the copyright of a book from defendant, and defendant had agreed to give his whole time to their service, and not to engage in any other business. He was restrained from advertising a rival work. This subject was examined in *Fredericks* v. *Mayer* (1 Bosw., 227), and it was shown that the precedents in this State were against the exercise of this power. (See, also, *De Rivafinoli* v. *Corsetti*, 4 Paige, 264; *Sanquirico* v. *Benedetti*, 1 Barb. 315, and *Hamblin* v. *Dinneford*, 2 Edw. Ch., 527.) Now, without citing other cases, it is to be particularly noticed that these injunctions, when they have been granted, have only restrained the person who was to render personal services from engaging in other business. They have not assumed to compel him to continue in the business named in the contract. Far less have they compelled the other party to carry on the business for which he had engaged the aggrieved person's services. If, in this case, this plaintiff had engaged in some other brush business, and the defendants had brought an action to restrain him from carrying on such other brush business, then the situation of the parties would have been similar to that of the parties in the English cases relied upon by plaintiff. But even such an action would not be within the English decisions, for the services which the plaintiff contracted to be rendered were not to be done by a party having "special, unique or extraordinary qualifications." It can readily be seen that the court might restrain by injunction a great actor from playing at another theater in violation of his contract, while it would not restrain a salesman from quitting his employer before his contract had expired, even though under the contract he were to be paid by a percentage on sales. For it might be said that one who had engaged a great actor could procure no substitute, if the actor broke his engagement and performed elsewhere. While, if a salesman left his employer, it would ordinarily be easy to supply

his place.   Thus it is that Mr. Pomeroy limits the cases to those of
" special, unique and extraordinary qualifications."

We are not aware of any case where there has been a contract
for personal services, and where the court has, by injunction com-
pelled the employer to continue a business in which he had engaged
the services of the plaintiff.   And there are obvious reasons why
this should not be done.   The business might be unprofitable
or the party might desire to close up his business, or he might have
a personal dislike to the employee.   In these and similar cases he
could properly discharge the employee and pay damages for the
breach of contract.   Therefore, it is that none of the English cases
apply here.   Even if an actor were to be paid a certain proportion
of the gross receipts, we cannot think that the court would compel
the manager of the theater to carry on the business.   Possibly the
plaintiff may urge a familiar rule that, in actions for specific per-
formance, the remedy is said to be mutual.   He may insist that, by
analogy, wherever an injunction would be granted to restrain the
violation of a contract for personal services on the one side it would
be granted on the other; but we think that does not follow.   If
personal services were to be paid at a certain fixed price, the
party who performed or tendered performance of the services could
obtain redress by an action for money.   Nothing else would be
needed.   And so in this case, if the plaintiff performs or offers to
perform, all that he needs is an action for damages.

The plaintiff urges that by implication the defendants in their
contract agreed not to employ the convicts at another work than
brush making, and he says that an injunction should issue to prevent
such other employment.   But this injunction goes much further.
It does not forbid other work (except by implication), but it com-
mands, positively, work under the contract.   This is beyond the line
of precedent.   There is here no case of irreparable injury.   The
whole matter is one of pecuniary damage.

Again : The plaintiff's remedy by an action for damages is com-
plete ; because if the contract were continued through the year the
plaintiff at the end of it would have received a certain amount of
money.   Now, if he should recover that same amount of money in an
action of law he would be exactly as well off as if the contract had
been carried out.   There are no collateral damages such as loss of

trade and destruction of credit, as mentioned in *Watson* v. *Sutherland* (5 Wall., 74). All the plaintiff can ask, all that he could have in any case, is the amount of ten per cent upon the sales, and rent reserved. But the plaintiff argues that it is impossible to prove what the amount of sales would be. Not at all difficult to prove what they might be. The capacity of the working power of defendants would show how many brushes they might have made. The market-price would show what the brushes would sell for ; and it would not lie with a party which has broken its contract to say perhaps he might not have found a market. The case of *Wakeman* v. *Wheeler & Wilson Manufacturing Company* (101 N. Y., 225) shows how far the court will go in giving what are sometimes called prospective damages. In that case the damages were much more uncertain than they could be in this.

But the plaintiff says there is no legal remedy, because there is no person who can be sued at law upon this contract. It seems to us that this position, if correct, takes away plaintiff's ground altogether. He asks us to enforce a contract in equity because there is no contract in law. If these defendants made no valid contract, then there is nothing to enforce by injunction ; if they made a valid contract, an action at law must lie. Some one must be the party on the other side of the contract. The plaintiff has assumed in this action that the defendants are the proper parties. He sets up that McEwen made the agreement, and that the commissioners approved ; and he asks that the defendants carry out and perform the terms of said contract. He, therefore, assumes that there is a valid contract, with some one ; as he says, with the defendants, or, at least, with McEwen. Now, without considering whether or not the plaintiff has selected the proper defendants, it seems to us plain that, if there is a valid contract, he can have damages for its breach ; if there is none, he cannot have an injunction.

If, in an answer to this, the plaintiff should cite the case of specific performance of a verbal contract for the sale of land, where there has been part performance, the reply is that relief in that case rests on what has been called, " equitable fraud." The defendant is really charged upon the equities done in execution of the contract, and not upon the contract itself. (*Maddison* v. *Alderson*, L. R., 8 App. Cases, 475.) We have already said that where a person engages an employee

in a business for a specified time, it would be wrong to compel the employer to continue the business, which might be growing unprofitable, or in some way objectionable to him. That view strikingly applies here. It is known that a serious question has arisen whether the defendants can lawfully continue the use of machinery. Careful and able opinions have been expressed on each side. Now, in this uncertainty, it may well be prudent for the defendants to refuse to do what may possibly be illegal, and what they seem to think is illegal. If it is not illegal, and if, therefore, they have broken their contract, let the plaintiff sue for damages. But the court should not use the forcible remedy of injunction, requiring them to do an act which it may finally be determined that they had no right to do. It has been well said by defendants' counsel, that even if the statute does not apply to the penitentiary, yet it is an evidence of the public policy of the State; and, if defendants choose to regard that public policy, they should be allowed to do so, subject to the risk on their part (or on the part of those whom they represent) of compensating the plaintiff for any damages which this recognition of the general policy of the State may have caused him. In these views we do not pass on the question whether the statute applies to the penitentiary, but we are of the opinion that the injunction should not be sustained.

Order reversed, with ten dollars costs and printing disbursements, and motion for injunction denied, with ten dollars costs.

LANDON. J., concurred; INGALLS, J., not acting.

Order reversed, with ten dollars costs and printing disbursements.