(26 Misc. Rep. 171.)

WESTON v. GOLDSTEIN et al.

(Supreme Court, Special Term, New York County. January, 1899.)

INJUNCTION—PENDENTE LITE.
   Where plaintiff alleged that he assigned corporate stock to one of the defendants, without consideration, to enable him to become an officer therein, and to secure his services as secretary, and that he agreed to hold three-fourths of the stock in trust for plaintiff and another, but had fraudulently transferred it to his sister, the other defendant, without consideration, and that she threatens to transfer it, an injunction may be

granted restraining such transfer pending plaintiff's action to compel re-assignment, and for an accounting of dividends, under Code Civ. Proc. § 604, subd. 1, authorizing an injunction pendente lite where a defendant threatens to do any act respecting the subject of the action violative of plaintiff's rights, or tending to render a judgment ineffectual.

Action by Charles W. Weston against Louis A. Goldstein and another. Motion for a preliminary injunction. Granted.

H. V. N. Philip, for the motion.
Abraham B. Schleimer, opposed.

SCOTT, J.   Prior to January 17, 1896, the plaintiff and one Henry W. Williams were the owners of 255 out of the 500 shares into which the capital stock of the J. M. Gunst Disinfecting Company was divided. J. M. Gunst, then and now the president of the company, owned 240 shares, which then were, and still are, pledged to plaintiff as collateral for a loan, and one Abram V. Harrington held title to the remaining five shares.   Harrington has been, at least, until recently, the vice president of the company.   On January 17, 1896, the plaintiff and Henry W. Williams made a contract with the defendant Louis A. Goldstein, wherein they agreed to sell to said Goldstein the 255 shares of stock, and he, in turn, agreed that he would not sell or dispose of any of the stock without the written consent of the plaintiff and Williams, and that if he did so dispose of said stock, or any part of it, he would pay to said Weston and Williams 75 per cent. of the sum realized on such sale, and in the meantime, and until such a sale, he was to pay to said Weston and Williams 75 per cent. of any dividends that might be declared and paid on the stock.   Goldstein, who, at the time of making this agreement, was a few months under 21 years of age, had been a clerk in the employ of the company, and, by the terms of the contract, agreed to devote his time and strict attention to the business of the company.   On the same day, the plaintiff and Williams executed a formal transfer of the stock to Goldstein, who caused it to be transferred to his own name on the books, and became secretary and treasurer of the company,—a position which he has ever since occupied.   Although the formal transfer of the certificates of stock recites that they were made for a valuable consideration, in point of fact no consideration whatever passed between the parties, except such as is implied in the contract above recited.   The nature and intent of this transaction are perfectly obvious.   The plaintiff and Williams, owning a majority of the stock, were unwilling, for one reason or another, to assume and undertake the active management of the company.   They desired to secure and retain the services of the defendant Goldstein as an officer of the company, which he could not be unless he were a stockholder of record.   They were content, prob-ably as an incentive to him to use his best efforts for the company, that he should have 25 per cent. of the profits accruing to the shares owned by them, whether by enhancement of value, or by way of divi-dends, reserving to themselves 75 per cent. of such profits; and finally, as a precaution against the disposition of their interest without their consent, they inserted in the contract a proviso that the stock should not be sold without such consent.   The defendant Goldstein, if his

own story be true, violated the agreement in a vital part, almost as soon as it was made, for he swears that 13 days later, on January 30, 1896, without the consent or knowledge of the plaintiff, Weston, he sold 250 of the shares to his sister, the defendant Schleimer. He says that they were so sold "for a valuable consideration," by which he doubtless means only that he signed a stock transfer reciting that it was made for a valuable consideration, for in the same sentence he says that these shares were sold to him by Williams and Weston "for a valuable consideration," the only foundation for such allegation being, as has been said, that the formal transfer contained such a recital. This statement as to the consideration for the alleged sale to the sister I am forced to consider disingenuous, and made with an intention to deceive; and I can have no doubt that he received from his sister the same "valuable consideration" that he paid to Williams and Weston, which was none at all. Whether any transfer was really made to his sister or not in January, 1896, it is certain that the fact of such a transfer, if made, was concealed from the plaintiff, and no attempt was made to transfer the shares on the books until December 30, 1898. The plaintiff now claims that the assignment of the shares to Goldstein, although absolute in form, was in reality subject to a trust that, as to at least 75 per cent. of the stock, Goldstein was to hold and deal with it only as the representative or trustee of the plaintiff and Williams; and the contract between the parties and the surrounding circumstances go far to substantiate this claim. He asserts that the pretended transfer of the shares to Goldstein's sister was without consideration, and merely colorable, and again the facts seem to sustain this contention. And, finally, the plaintiff asks that the defendants account to him for his share of any dividends that they may have received, and be compelled to retransfer to him such proportion of the 225 shares as he may be entitled to; and in the meantime he asks that the defendants be restrained from selling or transferring any of the shares of said stock, since, by so doing, any judgment he might obtain would be rendered ineffectual. The facts gathered from the affidavits bring this motion within the provision of the first subdivision of section 604 of the Code of Civil Procedure. The defendant Goldstein has already repudiated and violated the contract by which he agreed that he would not sell or transfer any of the stock without the written consent of the plaintiff and Williams. The defendant Schleimer claims to hold the stock absolutely, and in hostility to any right the plaintiff may assert thereto, and she nowhere disclaims any intention of transferring the stock, although she does deny that she has threatened to do so. An injunction pendente lite can do the defendants no real harm, even if they should be finally successful in the action, while to refuse it might, and probably would, render any judgment the plaintiff may obtain wholly valueless. In such cases preliminary injunctions are granted with some readiness. Bronk v. Riley, 50 Hun, 489, 3 N. Y. Supp. 446. The defense sought to be availed of by the defendant Goldstein, predicated upon his infancy at the time the stock was transferred to him by the plaintiff and Williams, does not, under the circumstances of the case, commend itself to my judgment as one which is likely to be successful upon the trial. The motion for an

injunction will be granted, with $10 costs, upon the giving by plaintiff of an undertaking in the sum of $1,000. Code Civ. Proc. § 620.

Motion granted, with $10 costs, upon plaintiff giving an undertaking in sum of $1,000.