THE PEOPLE ex rel. JOSEPH CAUFFMAN et al., Respondents, *v.* JOHN VAN BUREN et al., Appellants.

Unless an injunction order is void upon its face, for utter lack of jurisdiction on the part of the judge who granted it, a party disobeying it may properly be adjudged guilty of contempt. However erroneous the granting of the order may have been, unless there was an entire absence of judicial authority to act, it is the duty of the party to obey its commands until revoked, upon motion or appeal or some other method of direct review in the action in which it was granted.

An equitable action, analogous to a creditor's suit, may properly be brought in aid of and to enforce the lien of an attachment, by injunction and otherwise, before the recovery of judgment in the attachment suit, when the debtor's property has been fraudulently transferred and there is danger of its removal from the jurisdiction.

The attaching creditor after service of his warrant is no longer to be deemed a creditor at large, but a creditor having a specific lien, and for the purpose of upholding it the decision of the judge granting the attachment is to be deemed an adjudication of the existence of the debt, which is conclusive upon the fraudulent transferee.

*Thurber* v. *Blanck* (50 N. Y. 80), distinguished.

*It seems* the mere existence of the fraudulent transfer is not sufficient to authorize a court of equity to interfere; but this it may do when it is sought to make use of the transfer for the purpose of removing the attached property from the jurisdiction of the officer having it in custody.

Plaintiffs were creditors at large of defendants K. and T., who were insolvent; they fraudulently confessed judgments to others of the defendants, who entered into the arrangement with intent to defraud the other creditors; executions were immediately issued on said judgments, and by virtue thereof the sheriff levied upon all the tangible property of the debtors, advertised the same to be sold, and threatened and intended to sell the same. Plaintiffs on discovering these facts brought suit upon their claim and procured a warrant of attachment therein, which the affidavit stated "has been or will be levied upon the tangible property of said debtors." In this action plaintiffs claimed, as part of the relief to which

they were entitled, that the lien of the fraudulent judgment creditors under their executions be postponed to the lien plaintiffs had acquired by virtue of the attachment and that defendants be restrained by injunction from interfering with the property. A temporary injunction was granted, restraining the sheriff from interfering with the property levied upon by him until further order of the court. The summons had not been served when the order was signed, but was served with the order. The sheriff and one of the attorneys for the creditors who obtained the fraudulent judgments disregarding the order caused the property to be sold by virtue of the executions. Upon motion to punish the sheriff and said attorney for contempt, *held* (Earl, Ch. J., Finch and Peckham, JJ., dissenting), that the facts set forth constituted a cause of action, and afforded sufficient grounds for the equitable interference of the court; that, therefore, the court had jurisdiction to issue the injunction order; and that the parties violating it were properly adjudged guilty of, and punished for contempt.

The opposing affidavits alleged that the attachment was not served until after the injunction order was issued. *Held*, that conceding this to be so, while it may have tended to show that the judge who issued the order acted erroneously, and so might have been availed of on motion to set it aside, it did not affect his jurisdiction and could not be used to impeach collaterally the validity of his order.

Plaintiffs obtained judgment in the attachment suit for the amount of their claim. The court in the contempt proceedings imposed a fine to the amount of the judgment. *Held*, no error, that as it appeared the judgment debtors were insolvent, and as the lien of the attachment was destroyed by the sale, presumably plaintiffs' loss was the amount of the judgment, and in the absence of any proof in reduction of damages, the court had no discretion, but were bound to fix the amount of the fine at that sum. (Earl, Ch. J., Finch and Peckham, JJ., dissenting.)

The section of the Code of Civil Procedure (§ 608) providing that an injunction order may be granted to accompany the summons is not limited to orders granted under the section (§ 603) authorizing them where it appears from the complaint that plaintiff demands and is entitled to judgment restraining the commission of some act injurious to him during the pendency of the action (Earl, Ch. J., Finch and Peckham, JJ., dissenting), but applies as well to orders granted under the section (604) authorizing them "where it appears by affidavit that the defendant during the pendency of the action is doing * * * or threatens, or is about to do, * * * an act in violation of plaintiffs rights respecting the subject of the action."

The words "during the pendency of the action" have the same meaning in both provisions; they relate to the time when the threatened injury is likely to take place, not to the time when the order may be granted. (Earl, Ch. J., Finch and Peckham, JJ., dissenting.)

An order may be granted, therefore, under the latter section, before com-
mencement of the action, to become operative upon service of the sum-
mons and order, which may be made at the same time, although the
complaint does not ask for an injunction. (EARL, Ch. J., FINCH and
PECKHAM. JJ., dissenting.)

(Argued October 17, 1892; decided December 20, 1892.)

APPEAL from order of the General Term of the Supreme
Court in the fifth judicial department, made March 29, 1892,
which affirmed an order of Special Term, which adjudged
defendants, John Van Buren and Frank Hopkins, guilty of
contempt of court in disobeying a preliminary injunction
order, imposed a fine and directed their imprisonment until
the same was paid.

The preliminary injunction was granted in an action
wherein the relators here were plaintiffs and said Van Buren
as sheriff of the county of Oswego, Hiram A. Klock and Edgar
A. Tiffany, and others who were judgment creditors of said
Klock & Tiffany were defendants. The order restrained
the said defendants, their attorneys or agents from selling, con-
veying, or in any manner interfering with any property
belonging to said Klock & Tiffany until the further order of
the court, and directed that all proceedings on the part of
said judgment creditors under their judgments and the exe-
cutions issued upon them be stayed, until the final determi-
nation of the action. Plaintiffs had commenced an action
against Klock & Tiffany, in which an attachment was issued.
Judgment was subsequently recovered therein for the amount
of $1,470.32. The fine imposed was the amount of the
judgment.

The further material facts are stated in the opinion.

*M. M. Waters* for appellants. The county judge had no
jurisdiction to grant the injunction under the authority of
section 603 or 604 of the Code of Civil Procedure.
(*McHenry* v. *Jewette*, 90 N. Y. 58; *E. R. Co.* v. *Ramsey*, 45 id.
637; *Anthony* v. *Wood*, 96 id. 180; *Geery* v. *Geery* 63 id. 252;
*Hunt* v. *Hunt*, 72 id. 217.) The order of January 1, 1891,

was made without jurisdiction of the person of defendants, upon facts which conferred no jurisdiction of the process, a case in which the court had not jurisdiction of the subject-matter, to wit: to adjudge an unlevied attachment in an action at law to be a lien upon the property of a simple contract debtor. (*Thomas* v. *M. M. P. Union,* 121 N. Y. 45 52; *McHenry* v. *Jewett,* 90 id. 58; *People* v. *Canal Board,* 55 id. 390, 394, 395; *Allen* v. *Meyer,* 73 id. 1.) The sheriff held the property in his custody and possession under the execution by him levied before the commencement of the attachment action and said property was, therefore, in the custody of the law and not subject to any levy by attachment. (Crocker on Sheriffs, §§ 431, 449; *Van Winkle* v. *Udall,* 1 Hill, 559; *Hogan* v. *Lucas,* 10 Pet. 400.)

*William F. Cogswell* for respondents. The defendants were guilty of a plain contempt of the injunction order of this court, and their conduct in that respect is aggravated rather than mitigated by the matter set up by way of explanation. (Code Civ. Pro. § 626.) But if it could possibly be held that a case had been made under section 626, authorizing the application to any other judge to vacate this injunction, Special Surrogate Baker had no jurisdiction in the premises. (Code Civ. Pro. § 772.)

MAYNARD, J. The defendants were properly adjudged guilty of contempt in disobeying the preliminary injunction order granted by the county judge of Monroe county, unless the order was void upon its face for an utter lack of jurisdiction on the part of the judge who granted it. (*People* v. *Sturtevant,* 9 N. Y. 263.)

No matter how erroneous the action of the court may have been in taking cognizance of the suit and awarding a mandatory process, unless there was an entire absence of judicial authority to act in the premises, it was the duty of the defendants to obey its commands, until they had been revoked by an order made in the action in which they had been issued either

upon motion or appeal, or by some other method of direct review. It is not denied that the court acquired jurisdiction of the person of the defendants in this case, and its power to act was unquestionable, provided it had jurisdiction of the subject-matter of the action.

For the purpose of determining this question, all the averments contained in the complaint and in the plaintiffs' moving papers upon the application for the injunction order must be taken as unqualifiedly true. The plaintiffs were creditors at large of the defendants, Klock and Tiffany, who a few days before the commencement of this action, it is alleged, fraudulently confessed judgments to three of the defendants to the amount of $17,000, and about the same time fraudulently mortgaged or conveyed their real property to two of the other defendants. The defendant debtors were insolvent when these transactions occurred and, as it must be assumed, upon this appeal, they were entered into by the various parties to them, with the intent and for the purpose of defrauding the other creditors of Klock and Tiffany and in order to secure preferences to themselves; not obtainable under the general assignment laws of the state. Immediately upon the confession of these judgments executions were issued to the sheriff of Oswego county, where the debtors resided, and a levy was made by him upon all their tangible property, and, it is to be inferred, upon all the property which they then owned, which was subject to seizure, and the sheriff had advertised the property to be sold to satisfy the executions. Upon the discovery of these facts the plaintiffs at once began suit against their debtors to recover the amount of their debt and obtained and issued a warrant of attachment upon the ground that their debtors had assigned or disposed of, or were about to assign, or dispose of, their property with intent to defraud creditors,

It does not appear whether the attachment was delivered to the sheriff or the coroner, and it is perhaps immaterial, but it is claimed it was levied on the same property upon which the sheriff had levied under the executions issued upon the fraudulent judgments. But such levy would, *prima facie,* be

subject to the levy made under the prior executions, and the proceeds of the personal property if sold by the officer, must be first applied to the satisfaction of the elder process. This we think correctly states the legal relations of the parties to this property when the present action was commenced upon the equity side of the court, to which the fraudulent judg-ment creditors and grantees, the sheriff and the defendants in the attachment suit, were made defendants, and the plaintiffs demand as a part of the relief to which they claim to be entitled that the lien of the fraudulent judgment creditors under the executions which they have procured to be issued upon their judgments, shall be postponed to the lien which the plaintiff has acquired by virtue of his attachment.

The question whether the facts alleged constitute a cause of action and afford sufficient grounds for the equitable interfer-ence of the Supreme Court, is one which has never been authoritatively determined by this court, and the decisions in the courts below have been far from harmonious upon the subject. There has also been a great diversity of judicial opinion upon this point in other states and it is stated in the American and English Encyclopedia of Law (vol. 4, p. 575) that "whether an equitable suit analagous to the creditor's suit will be allowed in aid of the lien created by an attachment, before the recovery of judgment, is a question to which the American courts have given directly different answers." In the cases of *Hall* v. *Stryker* (27 N. Y. 596) and *Rinchey* v. *Stryker* (28 N. Y. 45), it was held that under a warrant of attachment any property of the debtor, transferred in fraud of his creditors, could be seized and that after service of the warrant the party procuring it is no longer to be deemed a creditor at large, but a creditor having a specific lien upon the goods attached, and that for the purpose of upholding the attachment and the lien acquired under it the decision of the judge granting the warrant is to be deemed an adjudication of the existence of the debt which is conclusive upon the fraudulent transferee of the debtor's property. In both cases suit was brought against the attaching creditor by a party

claiming title from the debtor by a transfer anterior to the attachment, and the creditor was permitted to show by way of defense to the action that the alleged transfer was fraudulent and, hence, void as to him. It has therefore been contended, and perhaps correctly, that they are not authority for the proposition that a party suing out an attachment can take affirmative action before the recovery of judgment to set aside a fraudulent conveyance of his debtor's property. He may use his process, it is claimed, for defensive purposes, but not for offensive warfare.

Still the cases may be regarded as decisive of the general question that an attaching creditor ceases to occupy the defenseless position of a creditor at large, and becomes, in a certain sense, invested with the privileges of a creditor whose debt has been adjudged valid and who finds himself embarrassed in its collection by the fraudulent conduct of the debtor. In *Hall* v. *Stryker*, Chief Judge Denio, at p. 601, says, " When the creditor has procured legal process, such as the law allows a creditor to have against the property of his debtor, he has acquired the standing of a creditor in respect to all the property of his debtor, and that which he has conveyed with the intent forbidden by the law (the conveyance being void) is as much his in the judgment of the law and as fully subject to the process, as if the conveyance had not been made.

" Under certain circumstances, the law has, upon motives of policy, allowed an *ex parte* determination as to the existence of the debt, and permitted process to issue against the debtor's property upon such determination, providing however, for sufficient security to the debtor, if upon a regular trial the alleged creditor shall fail to establish the existence of the demand."

These cases were followed in *Frost* v. *Mott* (34 N. Y. 253), where Porter, J., states the doctrine without qualification, that " A creditor, by attaching property in the possession of his debtor, acquires a specific lien upon his interest, and is entitled, like a judgment creditor, to impeach the colorable

title of a fraudulent mortgagee." But this was also a case where the attaching creditor had been made a defendant in an action of trespass for the taking of the property and nothing was therefore, necessarily, decided, except that, under such circumstances, he could defend his possession by showing the fraud which would defeat the claimant's title.

In *Thurber* v. *Blanck* (50 N. Y. 80), it was held that an attaching creditor had no standing in court to reach equitable assets until his remedy at law was exhausted nor to attack a fraudulent transfer of the property of his debtor until after judgment; and in the *Mechanics and Traders' Bank* v. *Dakin* (51 N. Y. 519), the commission of appeals held that an attaching creditor after the recovery of judgment and the issuing of execution may maintain an equitable action in his own name to set aside a fraudulent transfer of the property which had been seized under the attachment. The impression seems to have prevailed that there was an irreconcilable conflict between these two cases and the reporter in a foot note in the 51 N. Y., says: "This case, it will be perceived, was argued prior to the decision of the case of *Thurber* v. *Blanck* (50 N. Y. 80), with which it is in conflict. That case had not been brought to the attention of the commission at the time of the decision herein." But we fail to discover any real ground of antagonism between them. In *Thurber* v. *Blanck* the court was dealing with an attempt on the part of an attaching creditor to reach equitable assets, which it has been uniformly held cannot be done until judgment has been recovered, execution issued and returned unsatisfied, and an action or proceeding in the nature of a creditor's bill instituted. The provisions of the Revised Statutes (now §§ 1871–9 of the Code) which authorized a judgment creditor's action imperatively required the recovery of a judgment and the issue and return of an execution unsatisfied as an indispensable condition of the creditor's right to bring the action.

In *Bank* v. *Dakin*, the attaching creditor had, by the recovery of judgment and the issue of execution, acquired the right to have the attached property applied to the satisfaction

of the execution, but in the assertion of this right he found
the way obstructed by the interposition of a conveyance of
the property by his debtor, which was apparently valid, but
which was in fact void.   In such cases it has always been held
that while the process for the collection of the debt was out-
standing the equitable jurisdiction of the court could be
invoked to remove the fraudulent obstruction to the legal
process and permit it to be effectually enforced.   The sub-
sequent decisions bearing upon the question in this court have
all been in line with the principles enunciated in these two
typical cases, but none of them involved the point here pre-
sented of the right of an attaching creditor to prevent the
application of the attached property to the payment of a prior
lien.   It must be apparent that unless such a right exists the
remedy by attachment will be lost in many cases.   The sheriff
must sell the property under the prior executions and apply
the proceeds to their payment, and the plaintiff would be in
no better condition than if his attachment had not issued.   It
would seem to be illogical to accord to the plaintiff the right
to attach property fraudulently transferred, as he concededly
may under the decisions in *Hall* v. *Stryker*, and the other
cases cited above, and yet deny him the right to have the lien
preserved until he can merge his claim in a judgment and issue
final process for its collection.   No adequate remedy at law
can be suggested in such a case.   The jurisdiction of a court
of equity to reach the property of a debtor justly applicable
to the payment of his debts, even where there is no specific
lien, is undoubted.   It is a very ancient jurisdiction, but will
be exercised only when special circumstances exist requiring
the interposition of the court to obtain possession of and apply
the property.   Such circumstances, we think, are shown to
exist here.   The case would be different if executions had not
been issued upon the fraudulent judgments.   The mere exis-
tence of a fraudulent transfer would not be sufficient to
authorize a court of equity to entertain an action at the suit
of an attaching creditor to set it aside.   But when it is sought
to make use of such a transfer for the purpose of removing

1892.]  People ex rel. Cauffman *v.* Van Buren et al.  261

Opinion of the Court, per Maynard, J.

the attached property from the jurisdiction of the officer who has it in his custody, it is evident that nothing but the equitable arm of the court can prevent the consummation of the wrong.

In the case of *Falconer* v. *Freeman* (4 Sand. Ch. 565), the precise point here involved was decided in favor of the plaintiff's contention and the vice-chancellor held that a court of chancery will aid an attaching creditor to enforce the lien of the attachment by injunction and otherwise, on the same principle that it aids an execution creditor similarly obstructed. There are some cases in the Supreme Court to the same effect. (*Bates* v. *Plonsky*, 28 Hun, 112; *Keller* v. *Payne*, 22 Abb. N. C. 352; *Tannenbaum* v. *Rosswog*, Id. 346, 354.) The objection is urged that the creditor may be unsuccessful in establishing his debt in the attachment suit, and it thus may be found that there was no basis for the equitable action. But such a risk attends all litigation, and provision for full indemnity is made in the requirements of the statute for security both upon the issue of the attachment and the granting of the preliminary injunction. Both actions are pending in the same tribunal which can control the order in which they shall be tried, and if issue is joined in the action at law, the determination of the equitable action may be postponed until the former has been finally disposed of.

The measure of relief to be granted in the equitable action is also discretionary with the court and might be limited to a decree enjoining interference with the attached property until the plaintiff's right to follow the attachment with an execution has been adjudged.

The court, therefore, had jurisdiction of the action in which the injunction order was granted and the violation of its provisions by the defendants was inexcusable.

It is insisted that the attachment had not been levied when the injunction was obtained and that it was, therefore, prematurely issued. That may be so. There is some ambiguity in the moving papers and some expressions which may support such a finding, while the opposing affidavits upon this motion positively affirm that it was not served until the next

day after the injunction order was made. The fact is not material here. If it possessed any weight, it did not affect the jurisdiction of the county judge. It may have tended to show that he had acted erroneously and might have been available upon a motion to set aside his order, but it cannot be used for the purpose of impeaching its validity collaterally.

It is urged that the county judge had no jurisdiction, because the summons had not been served when the order was signed. Section 608 expressly provides that the order may be granted to accompany the summons. This section cannot be construed to refer solely to an injunction granted under section 603. It is not limited in terms. It is a substitute for that part of section 220 of the old Code, which provided that the injunction might be granted at the time of commencing the action, which was also held to apply to all kinds of preliminary injunction orders. This language was much more restrictive than in the present Code, and yet it was held that the order might be granted before the commencement of the action; but would not become operative until the service of the summons, which might be made at the same time with the order. (*Leffingwell* v. *Chave*, 10 Abb. Div. 472.) In this case Woodruff, J., says: "It imports that the injunction may be obtained, so that it shall operate at the time when, and as soon as, the action is commenced, and not alone after it is commenced. This accords with good sense. It meets a very large class of cases, in which it is of vital importance to the plaintiff to enjoin the defendant at the very instant he is apprised that an action is commenced, and in which the defendant would, but for such injunction, defeat the very object of the suit. The section which declares that the court is deemed to have acquired jurisdiction in a civil action from the time of the allowance of a provisional remedy, is in harmony with this construction and sustains it."

It is not seen how any different meaning can be attached to the phrase " during the pendency of the action " when it occurs in section 604 than when used in section 603. In both cases it

relates to the time when the threatened injury is likely to take place, and not to the time when the injunction order may be granted, and in order to judicially satisfy the judge that the defendant threatens to do some act during the pendency of the action, that will impair or defeat the plaintiff's remedy, it is not necessary to show that the action has been actually commenced. It is enough, if it appears that there is a cause of action, which the plaintiff is about to prosecute and that defendant threatens to do an act which will render the judgment ineffectual, to confer jurisdiction upon the judge to /ᴸ grant the injunction which, however, will not become operative unless served with or after the summons.

The amount of the fine was correctly fixed. When the order was made the plaintiff's debt in the attachment suit had become merged in a judgment, as appears from the record here. He had a valid lien by attachment upon property sufficient to secure its payment. That lien was destroyed by a sale which the injunction order prohibited. Presumably, the plaintiff's loss was the amount of their claim, as it is conceded the judgment debtors are insolvent.

The defendants made no proof in reduction of damages and under the mandatory provision of section 2284 we do not think the Special Term had any discretion; but was required to fix the amount at the sum named.

The order must be affirmed, with costs.

Earl, Ch. J. (dissenting). In the latter part of December, 1890, Hiram Klock and Edgar A. Tiffany confessed three judgments; one to the First National Bank of Oswego for $2,525, another to the same bank for $131.56 and one to Jacob M. Mertens and Alexander Dissell for $14,296.33. The judgments were entered and docketed in Oswego county, and executions thereon were issued to the sheriff of that county and by him immediately levied upon the property of the defendants in that county. The sheriff advertised the property for sale on the 2d day of January, 1891, at 10 o'clock A. M. On the first day of January, 1891, the above-named respondents,

constituting the firm of Cauffman, Dinklespiel & Co., doing
business in Rochester, presented to the county judge of Monroe
county an affidavit of Cauffman entitled in an action by the
respondents against all the parties to the judgments confessed,
John Van Buren, sheriff, and two other persons, and applied
to him for an injunction against the defendants. The affidavit
stated that in August, September and October, 1890, Klock
& Tiffany purchased of the plaintiffs in that action mer-
chandise at the agreed price of $1,346.75 which they had not
paid; that at the time of such purchase they made certain
false and fraudulent representations as to their financial
ability; that the judgments above specified were fraudulently
confessed and were irregular, fraudulent and void, as were
also the executions issued thereon; that on the 31st day of
December, 1890, in an action brought by the plaintiffs against
Klock & Tiffany, for the recovery of the purchase price of
the goods sold to them, "a warrant of attachment was duly
granted and issued which has been or will be levied upon
tangible property of said defendants Klock & Tiffany;"
that the action in which the affidavit was made was brought
for the purpose of obtaining the judgment of the court that
the judgments by confession were void; that the plaintiffs'
lien under the attachment was superior to the lien of the
judgments; that they were entitled to an injunction restrain-
ing the defendants from any interference with the property
of Klock & Tiffany, and restraining all proceedings under
the judgments and executions; that the defendants threatened
and intended to sell the property levied upon on the second
day of January, unless restrained and that if the sale took
place great and irreparable damage would be done to the
plaintiffs and their attachment would be unavailing and their
claim against Klock & Tiffany would be lost and useless. No
other papers were presented to the county judge. Upon this
affidavit he granted to the plaintiffs an injunction order
restraining the defendants from interfering with or selling
any of the property of Klock & Tiffany. At the time of
granting the injunction, the action had not been commenced,

and the attachment had not in fact been served. It is undisputed that the attachment was served in the forenoon of January second, and the summons and injunction in the equitable action were served together in the afternoon of the same day. After the service of the attachment and injunction the sale under the executions was postponed until January three, when the sheriff sold the property to Frank Hopkins, one of these appellants, who was at the time one of the attorneys for the sheriff and some of the other defendants in the equitable action. Thereafter the plaintiffs in the equitable action, these respondents, instituted this proceeding to punish these appellants, the sheriff and his attorney for contempt in violating the injunction. The proceeding was instituted by a petition of the respondents addressed to the Supreme Court, verified on the 21st day of January, 1891. Upon the presentation of the petition to a judge of the Supreme Court he made an order requiring these appellants to show cause at a Special Term of the court to be held in Rochester on the 28th day of January, 1891, why they should not be punished for the alleged contempt. Such proceedings were taken upon that order that the court adjudged them to be guilty of contempt, and it fined them for the purpose of indemnifying the respondents for the loss occasioned to them by the disregard of the injunction the sum of $1,470.32, the full amount of the claim of the respondents against Klock & Tiffany. The order imposing the fine is brought under review by this appeal.

If the county judge had jurisdiction upon the facts presented to him to grant the injunction, the defendants in the action were bound to obey it, although the exercise of the jurisdiction was plainly erroneous. (*Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637.)

If, however, it was granted without jurisdiction it was a nullity and bound no one. I propose now to confine my attention to the question of jurisdiction.

There is no general power in the equity courts of this state to grant injunctions. They have only such powers in that

respect as are given to them by the Code, and to its provisions we must look for its jurisdiction. (*Spears* v. *Mathews*, 66 N. Y. 127.) Section 603 of the Code provides that "when it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which during the pendency of the action would produce injury to the plaintiff, an injunction order may be granted to restrain it." The right of a plaintiff to an injunction order under this section depends upon the nature of the action as disclosed by the complaint, and the facts authorizing the injunction must exist at and before the commencement of the action, and relief by injunction must be demanded in the complaint. This section provides for every case where the plaintiff is entitled to an injunction on account of facts existing at and prior to the commencement of his action. Under this section the injunction may be granted to accompany the summons and complaint, and to be served with them and at the same time; and it may also be granted and served at any time after the commencement of the action. If properly granted under this section it may even be served before the commencement of the action and the party against whom it was granted would be bound to obey it, as he might be bound to obey an injunction before it has been served upon him if he has notice that it had been granted. (*Daly* v. *Amberg*, 126 N. Y. 490.) This is so because the court or officer having jurisdiction to grant the injunction it became a valid binding process.

This injunction was not granted, and could not have been granted under this section, because at the time it was granted there was no complaint in the action, and none came into existence until February 11, 1892, more than two weeks after this proceeding was instituted. And further, if we look at the complaint we find that it contains no demand for relief by injunction, and no mention whatever of an injunction or any restraint.

The only other section of the Code under which the respond-

ents can claim to uphold the injunction is section 604, which provides as follows: "In either of the following cases an injunction order may also be granted in an action: 1. When it appears by affidavit that the defendant, during the pendency of the action, is doing, or procuring or suffering to be done, or threatens, or is about to do or to procure, or suffers to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom. 2. When it appears by affidavit that the defendant, during the pendency of the action, threatens or is about to remove or dispose of his property with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition." Under this section, an injunction can be granted only for acts being done or threatened after the action has been commenced and during its pendency, and unless the action be pending there is no jurisdiction to grant the injunction. Such is the plain language and import of the section, and so the scheme of the Code as to injunctions is complete. The one section provides for the cases where the facts existing at the commencement of the action entitle the plaintiff to relief by injunction, and the other section provides for cases where facts subsequently occurring entitle the plaintiff to such relief, and the two sections provide generally for all the cases.

Here, as I have stated, this injunction was granted under section 604, when no action was pending. There was not, therefore, a case in which an injunction could be granted, and the county judge was absolutely without jurisdiction to grant it. There was no evidence before him of any kind that the action was pending, or tending in any degree to show that it was pending, and thus there was nothing to call for the exercise of his jurisdiction. It is of no importance that the action was subsequently commenced by the service of the summons, and that the injunction was served at the same time. The validity of the injunction must be tested by the facts existing when it was granted and properly placed before the county judge.

This injunction was, therefore, a nullity, and the appellants could not be legally punished for disobeying it.

I have not overlooked section 608 of the Code, which provides that the injunction order "may be granted to accompany the summons, or at any time after the commencement of the action and before final judgment." All these sections must be construed together and harmonized. Clearly every injunction order cannot accompany the summons into the hands of the person who is to serve them. An injunction order which cannot be granted until after the action has been commenced cannot accompany the summons. Manifestly the provision means that every injunction order which has been validly granted may accompany the summons, not that an injunction order granted without jurisdiction, which is a nullity, may accompany the summons. Any injunction order granted under section 603 may accompany the summons, and never one granted under section 604, which can have no existence until after the action has been commenced.

If these respondents, not being judgment creditors, could, upon any theory, maintain their equitable action to set aside the judgments and executions as fraudulent and void, they could do so only by showing that they had, by the levy of their attachment, obtained a lien upon the property of Klock & Tiffany at the time they applied for the injunction. Such an action, if maintainable, would be in aid of the attachment to remove the fraudulent obstacles and obstructions placed in its way. But here, at the time the injunction was applied for and granted, the attachment had not been levied, and the respondents had no lien upon the property of Klock & Tiffany. There was, therefore, at that time absolutely no ground for the maintenance of the equitable action, or for the granting of the injunction, even if it be assumed that the action had been commenced. The respondents had no right whatever to the injunction, and it was manifestly erroneous to grant it. Although erroneous, we may assume that the injunction was not granted without jurisdiction on the ground here stated, and that the court, to maintain its dignity and

authority, could punish the parties enjoined for contempt in violating it by a fine not exceeding two hundred and fifty dollars under the latter part of section 2284 of the Code. But could the court impose a fine under the earlier part of that section on the parties enjoined for the purpose of indemnifying the respondents? Could the respondents wrongfully obtain an illegal injunction to which, on the papers presented to the county judge, they had no legal right whatever, and thus commit an outrage on the rights of the defendants in the action and then claim that they were aggrieved by a violation of the injunction and ask for indemnity on account of such violation? In other words, could they be aggrieved and legally damnified by the violation of an injunction to which they had, on the papers presented to the county judge, no shadow of right? I leave these questions unanswered. The discussion of them would be quite interesting, but is unnecessary now, as the order imposing the fine must be reversed upon the ground before stated.

The orders of the General and Special Terms should be reversed and the petition of the respondents dismissed, with costs in all the courts.

ANDREWS, GRAY and O'BRIEN, JJ., concur with MAYNARD, J.; FINCH and PECKHAM, JJ., concur with EARL, Ch. J., dissenting.

Order affirmed.