THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM J. GAYNOR, Respondent, *v.* JOHN Y. McKANE and Others, Appellants.

*" Jurisdiction" defined generally, and in respect to granting temporary injunctions — power of a judge to grant an injunction order — cannot be attacked collaterally — criminal contempt — civil contempt — plea in bar — legislative character of the act sought to be enjoined — mandatory injunctions, discretionary — injunctions which anticipate the judgment.*

Jurisdiction, in the strict meaning of the term, as applied to judicial officers and tribunals, means no more than the power to hear and determine a cause. It is the power lawfully conferred to deal with the general subject involved in the action; it does not depend upon the ultimate existence of a good cause of action in the plaintiff in the particular case before the court, and does not relate to the rights of the parties as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced nor the right of a plaintiff to avail himself of it if it exists. It precedes those questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial· of any equity either in the plaintiff or in any one else. Jurisdiction is entirely independent of the manner of its exercise, involving the power to decide either way upon the facts presented to the court.

The term "jurisdiction," as generally used in equity jurisprudence, imports not the power to hear and decide, but the cases and occasions when that power will be exercised, and is to be distinguished from the use of that term in its strict meaning.

The jurisdiction of the Supreme Court in respect to the granting of a temporary injunction is not general, but limited; and such temporary order must be made in compliance with the provisions of the Code of Civil Procedure, or it will be treated as void.

The jurisdiction of the Supreme Court, under the provisions of section 603 of the Code of Civil Procedure, is made dependent upon the presentation to the court or judge of a complaint setting forth facts, under which the plaintiff claims to be entitled to, and upon which he demands, equitable relief; but it is not dependent upon the conclusion at which the judge arrives upon the facts stated in the complaint. Whether they constitute an equitable cause of action, or create a case within equitable cognizance, is a judicial question to be decided by the judge to whom the application is made, and his power to decide does not depend upon the correctness of his decision.

An injunction order was granted by a justice of the Supreme Court, in an action over the subject-matter of which such court had jurisdiction, upon a verified complaint in which the plaintiff demanded equitable relief, and which set forth the facts upon which such relief was claimed and granted, upon the presentation of such complaint.

*Held*, that it became the duty of such justice to consider and decide whether or not to grant the order asked for; that he had the power to consider the case and decide the application, and his determination upon the facts before him, and the order which he issued could not be said to be void, although it might be erroneous, and that it could not be reviewed or questioned in any collateral proceeding, but must be respected and obeyed until vacated or set aside in the same suit in which it was granted;

That where a court has jurisdiction of the subject-matter of an action, and a justice thereof has jurisdiction to consider and decide an application for a temporary order made therein, it is the duty of the person enjoined by such order to obey it; and his disobedience or resistance to its mandate is an offense punishable as a criminal contempt.

A plea that the Supreme Court has not jurisdiction of the subject-matter of an action is a plea in bar.

Upon an application to punish a person for criminal contempt arising out of his disobedience of a temporary order made in an action, the question whether the complaint therein contained facts calling for the equitable interference of the court, or whether it set forth a valid cause of action in the plaintiff, cannot arise.

It is essential to sustain the conviction of a person for a civil contempt of court that there shall exist not only jurisdiction in the court or officer granting the order which has been disobeyed, but also a valid cause of action in the aggrieved party; it is otherwise in a case of criminal contempt, and in proceedings to prosecute such an act the court will look only to the question of power, and if there was jurisdiction to grant the order it will impose punishment upon those who willfully disobey it for the purpose of vindicating its own power and maintaining its own dignity, and leave any error as to private rights to be redressed in the orderly manner provided for by the rules of practice.

Criminal contempts consist in a violation of the rights of the public, as repre-
sented in their judicial tribunals; they involve no element of personal injury;
are directed against the dignity and authority of the court alone, and are of a
public character and indictable. An element of willfulness exists in them, and
they are punished in the interest of public justice and not in the interest of
individual litigants.

Civil contempts cause an injury to a party in a civil action. The acts need not
necessarily be willful, and they are punished by a fine awarded to the indi-
vidual litigant as an indemnity for his loss, and payment of which is enforced
by the compulsory process of the court exerted in his behalf.

The conviction of such a contempt involves a judicial determination that the
party's rights or remedies have been defeated or impaired by the contemptu-
ous act, and the court, in determining whether a person is guilty of a civil con-
tempt will look into the facts of the case and see if they present an occasion
for equitable relief.

In cases of criminal contempt the only inquiry pertinent to the nature of the
alleged contemptuous act is whether the order which has been disobeyed or
resisted was made by a court or officer having power to make the same, and
questions arising upon the facts are not to be considered in such contempt
proceedings.

Whether an act sought to be enjoined is or is not of a legislative character is
a judicial question to be disposed of by the court acting upon the facts, and if
the court errs in its conclusion the remedy is by appeal and not by disobey-
ing its mandate.

Mandatory injunctions which require of a party the performance of some act
always, to some extent, anticipate the judgment of the court, and while it may
ultimately be determined that such an order was erroneous, yet it is no less
within the power of the court to grant it; it rests in its discretion and never
can be granted under the provisions of the Code of Civil Procedure unless an
action is pending.

Injunctions which in effect anticipate judgment or give some of the relief which
it is sought to obtain by the decree of the court should be granted with caution
and only when the necessity is great. Applications therefor call for great
care upon the part of the court to which they are made, but the power to grant
them is undoubted.

APPEAL by the defendants, John Y. McKane and others, from an
order of the Supreme Court, made at the Kings County Special
Term and entered in the office of the clerk of the county of Kings
on the 15th day of December, 1893, adjudging the defendants guilty
of a criminal contempt of court.

The appellants were adjudged guilty of resistance willfully offered
to and willful disobedience of an injunction order granted by Justice
JOSEPH F. BARNARD on November 6, 1893.

The injunction was granted in an action in which the relator was

the plaintiff, and the appellants McKane, Johnson, Crandell, Cropsey and others were defendants.

In the complaint in that action it was alleged that the plaintiff was an elector of the State, and entitled to vote in the county of Kings, and had been nominated for the office of justice of the Supreme Court by the Republican party and various Democratic bodies and was to be voted for at the election on November seventh.

That the defendant McKane was chief of police of the town of Gravesend in Kings county, and the other defendants were inspectors of election of the six election districts of said town, and that they had conspired together to make up a false and fraudulent registry list of the voters of said town, and under the color of such false registry list to permit persons to vote in said town who were not entitled so to do.

That the plaintiff had been prevented by the defendants from inspecting or copying said registry lists, and persons sent by him to take such copies had been arrested by the direction of said McKane and committed to jail without any opportunity to give bail.

That said defendants intended to refuse to allow watchers appointed by the Republican organization to enter the polling booths or to be present at the voting or at the counting of the ballots.

The judgment prayed that said defendants be enjoined from preventing the persons appointed as such watchers entering and remaining in the polling places of the election district of said town to which they should be appointed, and their acting as watchers and performing all duties pertaining to their office, including the right to see the ballots given out and votes cast and watching and overseeing the canvass of the ballots.

Upon the complaint, duly verified, and upon accompanying affidavits, a preliminary injunction was granted substantially as prayed for in the complaint.

The defendants were charged in this proceeding with willful resistance to and disobedience of said injunction, and have appealed from the orders adjudging them guilty upon such charges.

*James Troy,* for the appellants.

*Jesse Johnson,* for the respondent.

BROWN, P. J.:

If the Supreme Court had jurisdiction of the subject-matter of the action brought against the appellants, and if Justice BARNARD had jurisdiction to grant the preliminary injunction for disobeying or resisting which the appellants have been convicted, that order must be treated as a valid and binding order of the court, and as such was to be obeyed until it was revoked by a subsequent order made in the same action. (*People* v. *Sturtevant,* 9 N. Y. 263; *Erie R. R. Co.* v. *Ramsey,* 45 id. 644; *Mayor, etc.,* v. *N. Y. & S. I. Ferry Co.,* 64 id. 624; *People ex rel. Negus* v. *Dwyer,* 90 id. 402; *People ex rel. Cauffman* v. *Van Buren,* 136 id. 252.)

Jurisdiction, in the strict meaning of the term, as applied to judicial officers and tribunals, means no more than the power lawfully existing to hear and determine a cause.

It is the power lawfully conferred to deal with the general subject involved in the action. (Bouvier's Law Dict.; Anderson's Law Dict.)

It does not depend upon the ultimate existence of a good cause of action in the plaintiff in the particular case before the court.

"It is the power to adjudge concerning the general question involved and is not dependent upon the state of facts which may appear in a particular case." (*Hunt* v. *Hunt,* 72 N. Y. 217.)

"Jurisdiction does not relate to the right of the parties as between each other, but to the power of the court. The question of its existence is an abstract inquiry not involving the existence of an equity to be enforced nor the right of the plaintiff to avail himself of it if it exists. It precedes those questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity either in the plaintiff or in any one else." (*People* v. *Sturtevant,* 9 N. Y. 263.)

The Constitution of the State of New York gives to the Supreme Court general jurisdiction in equity, and the Code of Civil Procedure defines that jurisdiction to be all that was possessed by the Court of Chancery of England on the 4th day of July, 1776, with the exceptions, additions and limitations created by the laws of the State.

The English Court of Chancery granted the equitable remedy of jurisdiction by final decree and interlocutory writ, and the subject-

matter of the action was, therefore, within the jurisdiction of the court. But while the power in the Supreme Court to award the relief by final decree is general, the Code of Procedure has abolished the interlocutory writ and substituted in its place a temporary injunction to be granted by order, and has prescribed rules governing the application for and the granting of such an order.

In this respect the jurisdiction of the court or judge is not general, but limited, and such temporary order must be made in compliance with the provisions of the Code or it will be treated as void. (*Spears* v. *Mathews*, 66 N. Y. 127.)

The question is thus presented whether Justice BARNARD acquired jurisdiction to grant the temporary injunction.

It is provided in the Code, *inter alia* (§ 603), that when the right to an injunction depends upon the nature of the action, a temporary injunction may be granted when it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which during the pendency of the action would produce injury to the plaintiff.

Jurisdiction under this provision is made dependent upon the presentation to the court or judge of a complaint setting forth facts upon which the plaintiff claims to be entitled to, and upon which he demands, equitable relief, but it is not dependent upon the conclusion which the judge makes upon the facts of the complaint. Whether they constitute an equitable cause of action, or create a case within equitable cognizance, is a judicial question to be decided by the judge to whom the application is made. His power to decide does not depend upon the correctness of his decision. Jurisdiction is entirely independent of the manner of its exercise. It involves the power to decide either way upon the facts presented to the court.

When Justice BARNARD granted the injunction we are now considering he had presented to him a verified complaint, in which the plaintiff demanded equitable relief, and which set forth the facts upon which such relief was claimed, and upon those facts application for a temporary order was made. Upon the presentation of such a complaint it became his duty to consider and decide whether or not to grant the order asked for. He had power to consider the case and

decide the application made to him. His determination upon the facts before him, and the order which he issued, cannot, therefore, be said to be void. Clothed as he was with the judicial power to decide the order made was valid. It may have been erroneous, but it was not void, and it cannot be reviewed or questioned in any collateral proceeding, but must be respected and obeyed until vacated or set aside in the same suit in which it was granted.

The court having jurisdiction of the subject-matter of the action, and the justice jurisdiction to consider and decide the application for the temporary order, it was the duty of the appellants to obey it, and disobedience or resistance to its mandate was an offense punishable as a criminal contempt. (Code Civ. Proc. § 8.)

The question whether the complaint contained facts calling for the equitable interference of the court, or, in other words, whether it set forth a valid cause of action in the plaintiff, did not arise upon the application to punish for a criminal contempt, and, hence, is not before this court for review.

This rule, which is applicable only to cases of criminal contempt, to which class the present proceeding belongs, is to be distinguished from the rule applied in cases of civil contempt. In the latter class it is essential to sustain a conviction that there shall exist, not only jurisdiction in the court or officer granting the order which has been disobeyed, but also a valid cause of action in the aggrieved party; and this results from the fact that a civil contempt is not an offense against the dignity of the court, but against the party in whose behalf the mandate of the court has been issued, and a fine is imposed solely as indemnity to the injured party. And as there can be no injury when there is no right to maintain the suit, it is essential that this right should exist in order to sustain a conviction, and that question is always open for examination on appeal.

But it is otherwise in a case of criminal contempt. That offense involves no element of personal injury. It is of a public character, and indictable. It is directed against the dignity and authority of the court alone. Hence, in proceedings to prosecute such an act the court will look only to the question of power, and if there was jurisdiction to grant the order, it will impose punishment upon those who willfully disobey it, for the purpose of vindicating its own power and maintaining its own dignity, and leave any error as to private rights

to be redressed in the orderly manner provided for by the rules of practice.

And, obviously, no other rule could prevail and maintain the usefulness of the courts. It would be intolerable if any suitor could question and disregard the orders and decrees of the courts whenever he considered them erroneous. As well might the sheriff, who is their executive officer, refuse to execute them.

Under such a rule, the administration of the law would fail, and government would break down in one of its vital parts. The distinction between a civil and a criminal contempt is plainly stated in the Code in sections 8 to 14, inclusive, and has recently been pointed out by the Court of Appeals in *People ex rel. Munsell* v. *Oyer & Terminer* (101 N. Y. 245).

While I have been unable to find that this distinction has been referred to in any of the contempt cases, it underlies every decision, and the different questions that have been considered in the opinions in the reported cases result from the difference in the character of the two offenses, and the different results that follow conviction according as the contemptuous act has been prosecuted as a civil or criminal offense.

Criminal contempts consist in a violation of the rights of the public as represented in their judicial tribunals. An element of willfulness exists in them, and they are punished in the interest of public justice, and not in the interest of individual litigants. Civil contempts cause an injury to a party to a civil action. The act need not necessarily be willful, and they are punished by a fine awarded to the individual litigant as an indemnity for his loss, and payment of which is enforced by the compulsory process of the court exerted in his behalf. Conviction of such a contempt involves a judicial determination that the party's rights or remedies have been defeated or impaired by the contemptuous act. Hence, it follows that as a party cannot be said to be injured who has not shown himself to be entitled to the equitable right or remedy which has been awarded to him, the court, in determining whether a person is guilty of a civil contempt, will look into the facts of the case and see if they present an occasion for equitable relief. Such are the cases of *Erie R. R. Co.* v. *Ramsey* (45 N. Y. 637) and *People ex rel. Cauffman* v. *Van Buren* (136 id. 252).

Those were civil contempts, and where in the opinion the term "jurisdiction" is used, it was not intended to refer to the power of the court to hear and determine the application for the injunction, but to the occasion for the exercise of that power, which is "equitable jurisdiction," as that term is used and understood in equity jurisprudence.

As already pointed out, two questions were properly before the court in the cases cited : *First.* The question of abstract power in the judge who granted the order, and, *second,* was the plaintiff entitled to the remedy awarded ?

Unless the latter question was answered affirmatively the damages awarded could not be sustained, and all that was said about the jurisdiction of a court of equity to entertain such a suit as was then before the court meant nothing more than a consideration of the question whether a proper case for equitable relief existed on the facts presented. The discussion had nothing to do with the power vested in the court to consider and decide the case. That such power existed independent of the facts of the case was repeatedly stated in the opinion.

In *People ex rel. Cauffman* v. *Van Buren* it is true that the prevailing opinion in its opening proceeds to consider the question whether the court had jurisdiction of the subject-matter of the action. That was an inaccurate expression. There was no question of that kind before the court. A plea that the Supreme Court had no jurisdiction of the subject-matter of an action would be a plea in bar, because, if that court has no jurisdiction no court in the State has. As to any question arising under the laws of the State and between its citizens such a claim would be absurd. The jurisdictional question in that case was not as to the subject-matter of the action, but whether the affidavits presented to the county judge brought the case within the provision of the Code so as to authorize that officer to grant the preliminary injunction.

What the learned judge who wrote the prevailing opinion in that case intended to demonstrate and what he did demonstrate was that the facts set out in the affidavits presented a proper case for equitable cognizance ; or, in other words, that there was equitable jurisdiction, as the term is generally understood, and that question was a pertinent one to the case, it being one of civil contempt.

There is a clear distinction between the term " jurisdiction " in its strict meaning and as generally used in equity jurisprudence. In its strict meaning, as I have stated, it imports only the power residing in a court to hear and determine an action.

But as applied to the power of a court of equity it is ordinarily used with more limited signification, and imports not the power to hear and decide, but the cases or occasions when that power will be exercised. This distinction, while clearly pointed out in the best works on equity jurisprudence, has not always been observed in judicial opinions, and the expression " jurisdiction " has been used when the writers meant only to inquire whether the facts before the court presented a case for the proper exercise of the power of a court of equity.

Mr. Pomeroy has very clearly pointed out the distinction here referred to. (1 Pom. Eq. Juris. §§ 129, 130, 131.)

The term " equity jurisdiction," he says, is used in contradistinction to " jurisdiction " in general, and to " common-law jurisdiction " in particular.

" Equity jurisdiction," therefore, in its ordinary acceptation, as distinguished on the one side from the general power to decide matters at all, and on the other from the jurisdiction " at law " or " common-law jurisdiction," is the power to hear certain kinds and classes of civil causes according to the principles of the method and procedure adopted by the Court of Chancery, and to decide them in accordance with the doctrines and rules of equity jurisprudence."

If a court clothed with the equity jurisdiction as thus described should hear and decide, according to suitable methods, a case which did not fall within the scope of equitable jurisprudence, such judgment, however erroneous it might be and liable to reversal, would not necessarily be null and void. " Equity jurisdiction " may exist over a case although it is one which the doctrines of equity jurisprudence forbid any relief to be given, or any right to be maintained. This conclusion is very plain and even commonplace. Yet " equity jurisdiction " is constantly confounded with the right of a plaintiff to maintain his suit, and obtain his equitable relief, thus in fact making the power to decide whether equitable relief should be granted depend upon the actual granting of such relief."

In the sense here referred to the expression is used in the cases

cited, and when the term is used in the opinions in connection with the facts it has no reference to the power of the judge who granted the order, but to the question whether the facts showed a case for equitable cognizance.

The discussions which appear in the opinions in cases of civil contempt in reference to the plaintiff's cause of action are not, therefore, in any wise inconsistent with or opposed to the rule applied in cases of criminal contempt, and in the latter class the only inquiry pertinent to the nature of the alleged contemptuous act is, was the order which has been disobeyed or resisted made by a court or officer having power to make it? An examination of the decisions in this class of cases will show how closely the courts have adhered to this rule.

And when the facts have been referred to it was only in the way of argument, and the final assertion has always been that questions arising upon the facts were not to be considered in the contempt proceedings.

Thus, in the *Sturtevant* case, after considering the complaint and the nature of the act enjoined, and the point raised, that it being a legislative one the power did not exist in the courts to restrain it, Judge Johnson says: "Whatever may be determined as to the proper character of this act * * * it is, I apprehend, plain that the question of its true legal character is judicial. * * * The court, therefore, which is called upon to determine this question is called upon to perform a legitimate judicial function. It has authority to perform it and is exercising jurisdiction when it makes its decision. It follows, that it has power to arrest the consummation of the act until it determines the question; and its order, though it may be erroneous, cannot be regarded as void."

To the same effect are the remarks of Judge Finch in the *Dwyer* case, where a similar question was raised. He says: "Whether the act sought to be enjoined was or was not of a legislative character was a judicial question to be disposed of by the court acting upon the facts, and it could prohibit action until it could investigate and finally decide the question. If the court erred in its conclusion the remedy was by appeal, and not by disobeying its mandate." We are not, therefore, permitted upon this appeal to review the decision of Justice Barnard in granting the preliminary injunc-

tion.    His decision involved the determination of every question
necessary to support the order, and in making it he was exercising
the jurisdiction conferred upon him by the Constitution and laws of
the State.    His order was a valid exercise of judicial power, and
while the question whether such an action as was brought against
the appellants could be maintained is open to grave doubt, that ques-
tion is not now before the court and cannot be determined.    Dis-
obedience or resistance to the order was a criminal contempt.

The point that the act which it was sought to restrain was one
which would be final and complete before the trial of the action
does not affect the jurisdictional question.    Interlocutory writs of
injunction were granted by the Court of Chancery because of the
necessity of the case, and there could be no more proper occasion for
the interference of the restraining power of the court than one
where the injury would be complete before the plaintiff could bring
his suit to trial.

Mandatory injunctions which require of a party the performance
of some act always to some extent anticipate the judgment of the
court.    It may ultimately be determined that such an order was
erroneous, but it is no less within the power of the court to grant it.
It rests in the discretion of the court, and never can be granted
under the code of practice in this State unless an action is pending.
And ample provision is made to indemnify the defendants against loss
in case it is finally determined that the plaintiff was not entitled to it.

Numerous instances might be cited where the final judgment
could not operate upon the act sought to be restrained.

The cases instanced by Justice CULLEN, of a threatened interfer-
ence by a landlord with a tenant whose term would expire within
twenty days, or of a contract to perform some act immediately, are
fair illustrations.

The threatened interference with private property, which was the
case of *Cercle Francais de L'Harmonie* v. *French* (44 Hun, 123)
and *Brook* v. *Reilly* (50 id. 489), are further illustrations of this
power.    And while in both of the cases cited the preliminary
injunction was vacated, the power of the court to grant it in the first
instance was conceded.

Injunctions which in effect anticipate the judgment or give some
of the relief which it is sought to obtain by the decree of the court

should be granted with caution and only when the necessity is great. Applications therefor call for great care upon the part of the court to which they are made. But not only is the power to grant them undoubted, but the remedial and restraining power of a court of equity would be greatly impaired if such was not the rule.

The conclusions of the Special Term upon the facts have ample support in the evidence, and the orders appealed from are affirmed, with costs.

Dykman and Pratt, JJ., concurred.

Orders affirmed, with costs.