MERIDIAN LAND AND INDUSTRIAL COMPANY *v.* JAMES
B. ORMOND ET AL.

BUSINESS SIGN.    *Code* 1892, § 4234.    *Undisclosed principal.    Absence of
sign.    Insurance policy.    Garnishment.*

Code 1892, § 4234, provides that, if a person· shall transact busi-
ness, as a trader or otherwise, with the addition of the words
"agent," "factor," "and company," or "& Co.," or like words, and
fail to disclose the name of his principal or partner by a sign in
letters easy to be read placed conspicuously at the place of busi-
ness; or if any person shall transact business in his own name
without any such addition, all the property used or acquired in
such business shall be liable for the debts of the person so trans-
acting the business; and under this statute.

(a)    Where a mercantile busines was conducted under the name
"Ormond Grocery Company," without a sign disclosing the real
owner, the property used and acquired therein is subject to the
debts of the party transacting the business, although in so doing
he was in truth the agent of an undisclosed principal; and,

(b)    The proceeds of a policy of fire insurance on goods acquired
and used in such business and burned while in such use is liable
to the creditors of the party who transacted such business, and
may .be garnished by them.

FROM the circuit court of Lauderdale county.

HON. GUION Q. HALL, Judge.

The Meridian Land and Industrial Company, appellant, was
plaintiff in the court below; James B. Ormond, one of the
appellees was original defendant there, and his mother, Mrs.
Eliza J. Ormond, the other appellee, was claimant.    From a
judgment in favor of appellees the plaintiff appealed to the
supreme court.    The facts are fully stated in the opinion of
the court.  ·

*F. V. Brahan* and *Woods, Fewell & Fewell,* for appellant.

If we concede for the sake of argument that the business actually belonged to the appellee, Mrs. Ormond, the case made brought the property, etc., used and acquired in the business, within the liability imposed by the statute, both in letter and in spirit.

That James B. Ormond was transacting business as a trader with the addition of the words "& Co.;" that he was in the active ostensible management of that business with the title of "Manager" (which is a word like "agent factor, etc.," and therefore embraced in the meaning of the word "otherwise" in the statute), that he had or seemed to have full and complete control of the business, his mother not being known to the public as having any interest in the business; that there was no sign about the premises where the business was carried on disclosing the name of the mother, that the business was in the name of the "Ormond Grocery Company;" that the insurance policy was payable to Ormond Grocery Company, is undisputed.    So the case is brought within the very terms of the statute.    The case is within the spirit of the statute by the testimony of Mrs. Ormond that she carries on the business in that name because of the judgment existing against her son and by the positive concealment of the true ownership, as evidence by her note to Meyer & Winner guaranteeing payment for goods ordered by the son, we think is clear.

If it be contended that the name "Ormond Grocery Company" did not mean the same thing as "Ormond & Company" or even "J. B. Ormond & Company" because the word "Ormond" thus used might as well be taken to refer to Mrs. Ormond as to B. F. Ormond, we answer, this not only violates the letter of the statute, but its spirit also.    The statute does not say "with the addition to his name, but simply with the addition.    And when we consider the fact of open ostensible charge of the business and its transaction by the son, the words "Or-

mond Grocery Company" would naturally be taken to mean the Ormond in charge of the business. · There surely cannot be any difference, as regards the terms of the statute, between "Ormond & Company," which no one will dispute, would make the statute applicable, and "Ormond Grocery Company." · To so decide would enable persons to evade the statute.

In *Evans* v. *Bright,* 66 Miss., 148, the firm was Henley & Carroll. Mrs. Carroll claimed and it was admitted that she was the real owner. The sign was Henley & Carroll. Cooper, J., delivering the opinion of the court, said: "True it is that the sign employed was that of Henley & Carroll and that the name Carroll might be applied either to the husband or the wife. But the statute applies the same to the ostensible owner, to him who transacts the business, unless a sign displayed the name of his principal," citing *Gumbel* v. *Koon,* 59 Miss., 264; *Wolf et al.* v. *Kahn,* 62 Miss., 814; *Hamblet* v. *Steen,* 65 Miss., 474.

In *Quin* v. *Myles,* 59 Miss., 375, where the business was conducted by Bazinsky, and the contract between Bazinsky and the real owners of the business was that the name was to be Henry Bazinsky & Company, the only sign being Empire Saloon, it was held that the property used or acquired was liable to the debts of Henry Bazinsky because he transacted the business.

The statute embraces money due the concern by an insurance company in a policy drawn in favor of the Ormond Grocery Company for a loss sustained in the burning of the stock of goods in the place of business of the Ormond Grocery Company. The policy was acquired in the business. The amount due on the policy was certainly a chose in action. 6 Am. & Eng. Enc. · Law, 4, 5, and note.

*R. F. Cochran,* for appellees.

"Insurance is a contract whereby one, for a consideration undertakes to compensate another if he shall suffer loss." 1 May on Insurance (4th ed.), 2. ·

"It is also a personal contract and does not run with the title to the property. Whether the subject matter of insurance be a ship or a building or a life, or whatever else it may be, although in popular language it may be called an insurance upon the ship or building or life, or some other thing, yet it is strictly an agreement with some person interested in the preservation of the subject-matter, to pay him a sum which shall amount to an indemnity, or a certain sum agreed upon as an indemnity, in case his interest in the subject-matter shall suffer dimunition of value, from certain specific cause or in certain specified contingencies. It is a mere special agreement with a party seeking to secure himself against apprehended loss on account of his interest in a particular subject-matter, and not at all incidental to or transferable with the subject-matter. The contract of insurance does not run with the subject-matter of insurance, unless by special stipulations wholly foreign thereto. Satisfaction is to be made to the person insured for the loss he may have sustained; for it cannot properly be called insuring the thing, since there is no possibility of doing it, and therefore must mean insuring the person for damage." Id., 8 and 9. The contract before loss is not assignable and is not subject to garnishment or attachment. If an execution creditor levies on property subject to the execution and property is burned before sale under execution, the money arising from the insurance contract is not liable to the debt, that is, there is no lien on the money. If property is fraudulently conveyed, for instance, without consideration, and a bill is filed by creditors to set aside the conveyance, and the property is destroyed by fire before final decree, the money due on the insurance contract is not liable to the debts of the creditors filing the bill, although such a lien is attached to the property by reason thereof. The same is true as to mortgaged property. If, after the mortgage is given, the mortgagor has the property insured, and it is destroyed by fire, the mortgagee has no lien or claim on the insurance money.

These well-established principles show that the insurance money does not represent or stand in lieu of the property insured, and that an insurance contract is a personal contract of indemnity, which does not, in fact and in law, insure the property, but insures the owner against the loss specified in the policy.

The insurance policy in this case was not a chose in action before loss within the meaning of the statute.

This question is clearly settled by the authority of the case of *Jackson* v. *Millpaugh,* 15 So. Rep., 576.

The policy of insurance in this case was neither acquired nor used in the business of the Ormond Grocery Company within the meaning of the statute. If it had been acquired in or used as a part of the assets of the Ormond Grocery Company, it would have been conveyed as such, but the case of *Jackson* v. *Millpaugh, supra,* clearly settles that it could not be so conveyed. It was not acquired in the business of the Ormond Grocery Company and was clearly outside of, separate and apart from said business.

TRULY, J., delivered the opinion of the court.

On December 17, 1901, a fire occurred in the city of Meridian, which, among much other property, destroyed the entire stock of goods of the Ormond Grocery Company, which at that time was covered by a fire insurance policy for $2,000 in the Queen Insurance Company. On December 20, 1901, appellant had issued an execution against James B. Ormond on a judgment in its favor obtained some three years before, and suggested the probable indebtedness to said James B. Ormond of the Queen Insurance Company, and prayed for garnishment. The insurance company first answered denying any indebtedness, but afterwards, on 15th October, 1902, filed another answer, and paid into court the sum of $500, the amount for which its policy of insurance on the stock of the Ormond Grocery Company had been compromised by agreement between its

agents and Mrs. Eliza J. Ormond, and further stated that this money was claimed by Mrs. Eliza J. Ormond, and asked that she be cited to appear and contest the claim of the Meridian Land & Industrial Company to the same. On the same day Mrs. Eliza J. Ormond propounded her claim to said money or debt due by the garnishee on said policy of insurance, and averring that she was sole owner and proprietor of said property so insured, and that the money was hers. After some other pleadings, not necessary here to detail, issue was joined on the claim between the appellant and said Mrs. Ormond as to the liability of said money to the debt due by James B. Ormond to appellant. On the trial it developed that "Ormond Grocery Company" was the style under which the business concern was operated. Its sign and privilege license so read, and under this name its policy of fire insurance was written. There was no pretense that this was a corporation, the record plainly showing that the name was chosen purely as a convenient designation for the business. The letter heads of the concern contained the following: "Ormond Grocery Company, J. B. Ormond, Manager." James B. Ormond, according to the great weight of the testimony, was in sole charge of the business. He obtained the privilege license; bought goods to replenish stock, paid checks on the concern to the banks, paid his individual creditors by allowing them to trade in the store, paid at least a portion of the premium due on the fire insurance policy which was effected on the stock of goods, dealt with the other business men of the city, and, so far as the general public knew, was the sole proprietor and owner; and there was no sign about the store to the contrary, or to indicate who was the true owner. Mrs. Ormond, the claimant, testified that she was the owner of the business by purchase; that she was the mother of James B. Ormond; that she went to the store nearly every day, and personally investigated the accounts and business; that James B. Ormond was in immediate charge of said business, buying and selling goods,

and was her "agent managing said business," but further, that he was working for a fixed salary; that she would not give him an interest in the business, because she "knew of this unjust judgment hanging over him." The proof further shows that, when one of the local wholesale firms refused to sell Ormond Grocery Company on credit, the claimant signed a letter of guaranty to said wholesale firm, in which she stated that she would "see that any and all goods bought from said firm by Ormond Grocery Co., J. B. Ormond, Manager, are paid for." At the conclusion of the testimony in the case, each side asked a peremptory instruction, and the court gave that for the claimant, Mrs. Ormond; and the plaintiff in execution, the Meridian Land & Industrial Company, appealed to this court.

We cannot concur with the court below in the conclusion arrived at, as evidenced by the peremptory instruction given for appellee. It is manifest that the garnishment of the insurance company after loss incurred was perfectly proper. This very point was expressly decided by *Crescent Insurance Co.* v. *Moore,* 63 Miss., 419, and the case at bar is a plainer and stronger case than that. In the *Moore Case* the judgment was rendered against the garnishee before the loss under the insurance policy had been adjusted, and while the liability of the insurance company was still unfixed. In the case at bar the loss had not only been adjusted, but the money due by the insurance company actually paid into court to abide the result of the litigation between those claiming the fund.

The other and vital question here involved is whether the money paid into the court by the insurance company comes within the scope and meaning of section 4234, Ann. Code 1892 (section 1300, Code 1880). There can be no question, in the light of this record, that appellant's execution could lawfully have been levied upon the stock of goods in question prior to its destruction by fire, and a bald statement of the salient facts will show that it was liable for the debts of James B. Ormond.

Here was a man "transacting business as a trader," with the addition of the words "Grocery Company," with no sign "disclosing the name of his principal" anywhere about the house where the business was transacted. It would be difficult to frame a state of case more strictly within the intent and very letter of the statute. The fact that the word "Grocery" was added to the name "Ormond," together with the statutory word "Company," in no wise affects the legal principle. This was merely a characterization of the class of business conducted by "Ormond Company." The beneficent intent of a statute for the prevention of fraud cannot be defeated by such a transparent subterfuge.

With this in mind, we pass to the consideration of the other branch of the question: Can the money now in court in settlement of the loss of the stock be held? The language of section 4234, Code 1892, bearing upon the special point now under discussion is, "All the property, stock, money, choses in action, used or acquired in such business," shall be liable, etc. The word "acquire," as used in this statute, has no technical meaning. It means "obtain," "procure," "to get as one's own." Was not the money in controversy "obtained and procured" by and in this business? Did not James B. Ormond "get it as his own" through this business? A remedial statute must be liberally construed. Where its meaning and intent are plain, courts will not permit its force to be weakened—its scope limited—on account of possible verbal inaccuracies. In *Pollard* v. *Insurance Co.,* 63 Miss., 244, 56 Am. Rep., 805, speaking through Justice Campbell, this court held that an insurance policy covering a stock of goods was a contract in reference to the business—growing out of it, pertaining to it, concerning it. And the logical and luminous opinion in that case assists greatly in discerning the true legal principle controlling the question here involved. It is correctly stated by counsel for appellee that before loss an insurance policy against loss by fire is not a chose

in action.   This proposition is elementary, and needs neither
argument nor citation of authority; the reason being that there
has no right accrued to the assured under the policy, no liability
been incurred by the assurer.   But after loss—after the rights of
parties have vested by the happening of the contingency insured
against—how then?   The money due or the right of action
under the policy is the property of some one, and as such can be
subjected to the owner's debts by proper legal process.   Then to
whom does the money or right of action belong?   By operation
of law, it belongs to the person deemed by the law to have been
the owner of the property destroyed; and, the moment its own-
ership is fixed, it becomes liable, like all other property, to the
debts of its owner.   To illustrate: Suppose, under the second
clause of section 4234, Code 1892, a person was transacting
business in his own name with the means and for the benefit of
an undisclosed principal, and his stock was destroyed by fire,
would not the proceeds of the insurance policies on the stock be
liable to his debts?   Clearly so.   There is no legal distinction be-
tween the case supposed and the case at bar.   There is the same
undisclosed principal; the same fixing by law of the ownership,
"as to his creditors," in the ostensible owner; the same liability
for his debts.   In the case at bar, by operation of law, under
section 4234, Code 1892, the ownership of the stock of goods in
question was vested in James B. Ormond, not as against Mrs.
Eliza J. Ormond, but "as to his creditors;" and the moment the
property was destroyed the money due under the policy of in-
surance became "liable for his debts, and to be in all respects
treated, in favor of his creditors, as his property." Otherwise
this law intended to prevent fraud would be an encouragement
to commit greater fraud and crime.   For the dishonest debtor,
knowing his insured stock of goods liable under section 4234,
Code 1892, and fearing the levying of an execution, by apply-
ing the torch would have it in his power, if undetected, to defeat
his creditor, collect the policy, and pocket the proceeds.   This

certainly is not the law.   The peremptory instruction for appellee should have been refused, and that for appellant given.

*Reversed and remanded.*