## BERG et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. June 2, 1921.)

No. 5534.

1. **Courts ⬅497—First-acquired jurisdiction over specific property gives exclusive jurisdiction.**

A suit by which the court first acquires the lawful jurisdiction of specific property by the seizure thereof, or from which it appears that it is, or will become, necessary to a determination of the controversy involved, or to the enforcement of the judgment or decree therein, for that court to seize it, to charge it with a lien or trust, to sell or exercise like dominion over it, thereby withdraws that property from the jurisdiction of every other court, so far as necessary, to accomplish the purpose of the suit, and entitles that court to retain the control of it requisite to effectuate its final judgment or decree therein, free from the interference of every other tribunal.

2. **Courts ⬅508(2)—Federal court may enjoin interference with its prior acquired jurisdiction.**

A suit in a federal court against an executor and the widow of the decedent, in which the bill alleged that complainant became surety on a bond to the executor for payment of the debts of the estate, that the executor secured a judgment on the bond in a state court which complainant paid, and that with the proceeds the executor paid creditors of the estate who held liens on specific lands described, which were owned by decedent and devised by him to the widow, and prayed that complainant be subrogated to such liens and the lands sold to pay its claim, *held* to vest the court with exclusive jurisdiction over such lands for the purposes of the suit, with power to protect its jurisdiction by enjoining defendants from prosecuting further proceedings in the state court designed to interfere therewith.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by the Fidelity & Casualty Company of New York against Alex Berg, guardian, and others. From an order granting an injunction, defendants appeal. Affirmed.

R. W. Blair, of Topeka, Kan. (Z. C. Millikin, of Salina, Kan., and T. M. Lillard, of Topeka, Kan., on the brief), for appellants.

E. H. Gamble, of Kansas City, Mo. (G. A. Spencer, of Salina, Kan.. and Robert Stone, George T. McDermott, and Robert L. Webb, all of Topeka, Kan., on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This is an appeal from an injunction against further procedure by Alex Berg, guardian of the estate of Ellen Amelia Shute, James H. Shute, and Thomas L. Bond, executor of A. F. Shute, deceased, in an action in the district court of Saline county in the state of Kansas. The injunction is the result of the pendency of two actions between the same parties in two courts of concurrent jurisdiction, and it was issued to prevent the defendants in the suit in the federal court from interfering by means of proceedings

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in the state court with the exercise of the jurisdiction which the federal court claims over the specific real estate described in the complaint in the suit in that court.

[1] The question the case presents is: Did the district court of Saline county, in the state of Kansas, or the United States District Court of the District of Kansas first acquire jurisdiction over and dominion to seize and apply the real estate of Ellen Amelia Shute to the payment of the claim of the Fidelity & Casualty Company, a corporation, the plaintiff in the suit in the federal court. The rule of law by which the answer to this question must be determined is that the court which first acquired the lawful jurisdiction of specific property by the seizure thereof, or by the due commencement of a suit from which it appears that it is or will become necessary to a determination of the controversy involved, or to the enforcement of its judgment or decree, therein, for that court to seize, to charge with a lien or trust, to sell or exercise like dominion over it, thereby withdraws that property from the jurisdiction of every other court, so far as necessary to accomplish the purpose of the suit, and entitles that court to retain the control of it requisite to effectuate its final judgment or decree therein, free from the interference of every other tribunal. Mound City v. Castleman et al. (8th C. C. A.) 187 Fed. 921, 924, 110 C. C. A. 55; Lang v. Choctaw, Oklahoma & Gulf Ry. Co., 160 Fed. (8th C. C. A.) 160 Fed. 355, 359, 87 C. C. A. 307; Brun et al. v. Mann (8th C. C. A.) 145, 152, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Sullivan v. Algrem (8th C. C. A.) 160 Fed. 369, 370, 87 C. C. A. 318; McKinney et al. v. Landon et al., 209 Fed. 300, 305, 126 C. C. A. 226.

[2] The facts which condition the answer are these: A. F. Shute died seized of large tracts of real estate, all of which he devised to his widow, Ellen Amelia Shute, subject to his debts, which exceeded $50,000. His personal property was insufficient to pay his debts, and Thomas L. Bond, the executor of his will, instituted an authorized proceeding in one of the probate courts of Kansas to sell this real estate and apply its proceeds to the payment of the debts of the decedent. Section 4603 of the General Statutes of Kansas of 1915 provided that an order for the sale of real estate of such a decedent should not be granted, if any of the persons interested in his estate should give a bond in a sum and with sureties approved by the court to pay his debts and the expenses of the administration of his estate. James H. Shute, a son of the decedent, gave such a bond, with the Fidelity & Casualty Company as a surety thereon, the probate court approved this bond, and on February 10, 1917, ordered that the proposed sale should not be made. James H. Shute did not pay the debts, and on June 21, 1917, Thomas L. Bond, the executor of the will of the decedent, brought a suit on this bond in the district court of Saline county, Kan., against James H. Shute, the Fidelity & Casualty Company, and Alex Berg, the guardian of the estate of the widow, Ellen Amelia Shute, who was a person of feeble mind.

In his complaint the executor alleged the facts which have been recited, that the widow was the owner of all the property of which A. F. Shute died seized, that she was a person of feeble mind, and Alex

Berg was the guardian of her estate, and prayed for judgment against all the defendants for $50,000 and interest. This complaint stated no cause of action against Alex Berg, the guardian, or the widow. On August 10, 1918, the Fidelity Company filed its answer and cross-petition. It set forth certain defenses not now material, and averred that all the debts referred to in the complaint were debts against the estate of the decedent, that the widow was the "sole devisee, legatee, and beneficiary by reason of the payment thereof," and that if the Fidelity Company, by reason of the judgment of the court, should be compelled to pay these debts, it should "in equity and justice be subrogated to the rights of the creditors against the property of the estate of the said A. F. Shute, deceased"; and it prayed for the judgment of the court that, if a judgment should be obtained against it on its bond, it should be subrogated to the rights of the creditors against the property of the estate for any and all amounts which it might be compelled to pay to such creditors, and for such other and further relief as to the court might seem right and just in the premises.

On September 9, 1918, Alex Berg, guardian, filed his reply and answer to the answer and cross-petition of the Fidelity Company, and stated therein that he denied all the allegations of the answer and cross-petition, except that he was the guardian of the widow's estate, that she was of feeble mind, and that she was the sole devisee, legatee, and beneficiary under the last will of A. F. Shute, deceased. On December 20, 1918, the district court of the state rendered a judgment in favor of Thomas L. Bond, the executor, and against James A. Shute and the Fidelity Company upon their bond, for the sum of $50,000, interest and costs. No judgment or order against or in favor of Alex Berg, the guardian, was rendered or made. On March 17, 1919, the Fidelity Company paid that judgment to Thomas L. Bond, the executor. On the next day it filed in the suit in the state court its supplemental answer and cross-petition, wherein it alleged that on the day before it had paid the judgment in full, and it prayed that it might "be subrogated to the rights of the creditors against the property of the estate of the said A. F. Shute, deceased," in the amount of $50,-730.85 and interest thereon at 6 per cent. per annum from March 18, 1919, and for "such other and further relief as to the court may seem just and right in the premises."

On May 31, 1919, the Fidelity Company brought this suit in equity in the United States District Court for the District of Kansas against Alex Berg, guardian of the estate of the widow, James H. Shute, and Thomas L. Bond, executor of the will of A. F. Shute, deceased. In its complaint it set forth the facts which have been recited relative to the proceedings in the probate court of Kansas, the giving of the bond for $50,000 by James H. Shute and the Fidelity Company to pay the debts of the estate of A. F. Shute, the action in the district court of Saline county, the judgment on the bond, the payment of that judgment by the Fidelity Company to the executor of the estate of A. F. Shute, the facts that the executor paid, with the $50,730.85 he received from the Fidelity Company in payment of that judgment,

$2,145.08 costs of the proceedings of the probate court of Saline county in the matter of the estate of A. F. Shute, and $48,585.77 to 13 named creditors of that estate, the facts that there remained in the hands of Alex Berg, guardian of the estate of the widow in the state of Kansas specifically described real estate of which A. F. Shute died seized, the title to which passed from him to the widow under his will of the value of $120,000, that the 13 creditors whose claims the Fidelity Company paid held valid liens upon this real estate to pay their claims and that it was entitled to be subrogated to these liens. And that company prayed that it might be subrogated to the rights and liens of those creditors whose claims it had paid to and upon the real estate of which A. F. Shute died seized which was specifically described in its complaint, that the court adjudge it to have a first lien on this specifically described real estate for $50,730.85, which it paid to the executor and he paid to these 13 creditors, and that this specific real estate be sold and the proceeds thereof be applied to pay to the Fidelity Company the amount of this lien.

Between the commencement of this suit on May 31, 1919, and November 3, 1919, when the injunction was issued the defendants in this suit were taking various proceedings in the state court tending to interfere with the exclusive jurisdiction of the court below to apply the property described by the complaint in that court to the payment of the claim of the Fidelity Company. As those proceedings are not material to the determination of the question before this court, it is useless to recite them and they are omitted.

There can be no doubt that upon the filing of the complaint of the Fidelity Company and the commencement of the suit in the court below on May 31, 1919, that court acquired plenary jurisdiction to seize and apply the specific real estate described in the complaint to the payment of the claim of the Fidelity Company set forth therein, unless the state court had acquired jurisdiction of that property prior to that day. The Fidelity Company clearly stated in its complaint in the federal court the basis of its claim, the payment of the judgment on its bond, the names of the creditors of the decedent, A. F. Shute, whom and the amounts of their claims which it paid, that those creditors had valid liens upon the real estate which it specifically described and alleged to have been the lands of the decedent when he died and of the widow since, and it prayed that it be subrogated to the liens of those creditors upon those lands, that the lands be sold to pay the liens and that the proceeds be applied to pay its claim. It made the facts appear beyond doubt or cavil that it was or would become necessary to a determination of the controversy it presented, or to the enforcement of its judgment or decree in this suit for the court to seize, charge with a lien or trust, to sell or exercise like dominion over the real estate described in the complaint.

The commencement of the action in the state court invoked its jurisdiction to adjudge the single issue whether or not Thomas L. Bond, the executor, was entitled to a judgment against James H. Shute and the Fidelity Company on their bond. No other relief was sought by the executor. The action was a personal action, and no specific

property was mentioned or involved. It is true that, two months after the action in the state court was commenced, the Fidelity Company in its answer and cross-petition alleged that the debts set forth in the petition of the executor in the probate court to sell the real estate of the estate of A. F. Shute were debts against his estate, properly chargeable against it, that the widow was his sole devisee, and that, if the Fidelity Company should be compelled to pay those debts, it ought in equity and justice to be subrogated to the rights of the creditors, and that it prayed that, in case judgment was rendered against it on its bond, it be subrogated to the rights of the creditors of the estate for the amounts it should pay such creditors, and that it should have judgment against the estate of A. F. Shute therefor. It is equally true that the Fidelity Company on March 18, 1919, filed a supplemental answer and cross-petition in which it alleged that on the 17th day of March, 1919, it had paid the judgment on the bond to the clerk of the court, and that it prayed that it might be subrogated to the rights of the creditors against the property of the estate of A. F. Shute.

But the owner of the real estate then was not the estate of A. F. Shute. It was the widow, and before her real estate could be seized and applied to the payment of the amount the Fidelity Company paid, or should pay, it was essential to allege, and subsequently to prove, first, that the creditors of A. F. Shute, deceased, had liens or claims for certain amounts due them from A. F. Shute upon certain real estate of which he died seized, the title to which was passed to the widow; second, that the Fidelity Company, or the money it paid to the clerk of the court or the executor, had paid such liens or claims, that it sought to be subrogated to the rights of the owners of such liens or claims, and that it ask that the real estate subject to such liens or claims be sold to pay them. None of these essentials to the seizure and sale of the real estate of the widow appeared in the pleadings of the suit in the state court on May 31, 1919, when the suit in the federal court was commenced.

Conceding, without admitting, that the Fidelity Company might have filed such pleadings and might have followed such a course in the suit in the state court as to institute an adversary proceeding between it and the widow, that would have presented the indispensable issues between them, whether or not it had paid the creditors of the estate of A. F. Shute, and, if so, what creditors, and to what amounts, whether or not those creditors had liens or claims against specific property of the widow, and to what amount, whether or not it was entitled to be subrogated to the ownership of such liens or claims, and that it might have sought the foreclosure of such liens or claims and the seizure, sale, and application of certain real estate of the widow to the payment thereof, yet it did not do so, and it did not appear from the pleadings and proceedings in the state court on May 31, 1919, when the suit in the federal court was commenced, that it was or would be necessary to a determination of the controversies there involved, or to the enforcement of the judgment or decree of that court for it to seize, to charge with a lien or trust, to sell, or to exercise like dominion over any of the real estate of the widow described in the complaint in

this suit in the federal court. All that the Fidelity Company at that time prayed for was subrogation to the rights of one named creditor of the estate of A. F. Shute, deceased, and a judgment against the estate of A. F. Shute. It asked no relief against the widow, no seizure or sale of any property. The chancellor below found the fact to be that the federal court first acquired jurisdiction of the property in controversy. That finding is presumptively correct, and must prevail, unless the record clearly shows that an obvious error of law intervened, or the court made some serious mistake of fact.

No such error or mistake is perceived, and the order appealed from is affirmed.

---

⊗—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes