ACKERMAN v. TOBIN, and three other cases.*

Circuit Court of Appeals, Eighth Circuit. October 15, 1927.

Nos. 7677–7680.

**1. Attachment ⬞61—Claim for loss under insurance policy is ordinarily subject to garnishment immediately on occurrence of loss (Civil Practice Act N. Y. § 916).**

Claim for loss under insurance policy is subject to garnishment under Civil Practice Act N. Y. § 916, unless claim is rendered uncertain by options reserved by company, and, where policy does not stipulate to contrary, such claim accrues and is subject to garnishment immediately on occurrence of loss.

**2. Garnishment ⬞34—Unadjusted claim for loss under insurance policy is generally held to be subject to garnishment.**

Under doctrine that claim is sufficiently certain and liquidated to be subject to garnishment, where its amount may be ascertained by reference to some definite standard, it is generally *held* in state courts that unadjusted claim for loss under insurance policy is subject to garnishment.

**3. Garnishment ⬞42—Contingency preventing garnishment is not presented by garnishee's denial of obligation.**

Contingency which will prevent garnishment is not presented by mere fact of denial by garnishee of obligation.

**4. Attachment ⬞223—Judgment may be entered in attachment prior to bringing of action by sheriff against garnishee (Civil Practice Act N. Y. §§ 922[2], 969[4]).**

It is proper, under Civil Practice Act. N. Y. §§ 922(2), 969(4), for judgment to be entered in attachment cause prior to bringing of action by sheriff against garnishee.

**5. Attachment ⬞267—Warrant of attachment is not annulled by judgment (Civil Practice Act N. Y. § 953).**

Warrant of attachment is not annulled by judgment, but remains alive till dissolved by order of court or is paid, under Civil Practice Act N. Y. § 953.

**6. Judgment ⬞822(1)—Judgment of court legally acquiring jurisdiction is entitled to full faith and credit in other states, and irregularities in rendition cannot be attacked collaterally (Civil Practice Act N. Y. § 520).**

Where court regularly acquired jurisdiction of parties to action and of res by attachment without fraud, its judgment is entitled to full faith and credit in courts of every other state, under Civil Practice Act N. Y. § 520, and irregularities or errors in rendition of such judgment cannot be taken advantage of collaterally.

**7. Courts ⬞493(2)—Insured's action on policy, removed to federal court, did not oust jurisdiction of state court of another state to entertain attachment suits by insured's creditors to reach proceeds of policy.**

Pendency of action by insured against insurer for payment of loss under policy, removed to federal court, did not oust jurisdiction of state court in another state to entertain attachment suits by insured's creditors to reach proceeds of policy, since insured's action was in personam only.

**8. Abatement and revival ⬞12—Pendency of action in either federal or state court will not sustain plea of lis pendens to suit on same cause of action in the other.**

Pendency of suit on cause of action in state court will not sustain plea of lis pendens to suit on same cause of action in federal court, and converse is also true, that pendency of action in federal court will not sustain plea of lis pendens to suit on same cause of action in state court.

**9. Courts ⬞497—Where suit affects custody of property, court first acquiring jurisdiction of res may proceed without hindrance by any other court of co-ordinate jurisdiction.**

Where suit is brought in either federal or state court affecting custody of property, or which at some stage of proceeding may affect custody of property, and suit of like nature is subsequently brought in the other court, court which first acquires jurisdiction of res, actual or constructive, is entitled to proceed without hindrance by any other court of co-ordinate jurisdiction.

**10. Courts ⬞498—It is only while property is in possession of court that it protects such possession from process of other courts.**

It is only while property is in possession of court, either actually or constructively, that court is bound or professes to protect such possession from process of other courts.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Bill of interpleader filed by the Fidelity & Casualty Company of New York, in which Samuel Ackerman, Barnett Kleinman and others, Joseph Goldmuntz and others, and John C. Tobin, trustee in bankruptcy, etc., were interpleaded. From the judgment, Samuel Ackerman, Barnett Kleinman and others, Joseph Goldmuntz and others, and John C. Tobin, trustee in bankruptcy, etc., separately appeal. On appeal of John C. Tobin, as trustee, decree affirmed; as to the other appellants, decree reversed.

Harry S. Gleick, of St. Louis, Mo. (H. A. Gleick, of St. Louis, Mo., and Greenbaum, Wolff & Ernst, of New York City, on the brief), for Ackerman, Kleinman, Goldmuntz, and others.

Stern & Burnett, of St. Louis, Mo., for Tobin.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

*Rehearing denied December 23, 1927.

MOLYNEAUX, District Judge. The issues on the four appeals before the court developed from a bill of interpleader filed by the Fidelity & Casualty Company of New York in the District Court for the Eastern Division of Missouri. The Fidelity & Casualty Company, under a policy of insurance issued March 6, 1923, insured one Morris Singer against interior office robbery; Singer's place of business being in St. Louis, Mo. The facts in the cause were agreed upon.

Morris Singer suffered a robbery on December 16, 1923, and furnished proof of loss to the insurance company on February 4, 1924. In the meantime, in the course of his business operations, he had incurred liabilities to certain New York creditors, to wit, Samuel Ackerman, Barnett Kleinman and Solomon B. Stein, and Joseph Goldmuntz, Max Goldmuntz, and Paul Goldmuntz, doing business as Goldmuntz Bros. These liabilities were evidenced by notes. The Fidelity & Casualty Company disputed Singer's claim, and while the matter was in dispute, on March 10, 1924, Kleinman and Stein filed an attachment suit in New York and a warrant of attachment was issued thereon. On March 11 service of garnishment was had on the Fidelity & Casualty Company of New York; on April 1st constructive service was had by serving Singer in St. Louis.

On April 7, 1924, Singer began action against Fidelity & Casualty Company in the circuit court of the city of St. Louis. This suit was subsequently removed to the United States District Court for the Eastern Division of the Eastern District of Missouri. On various dates subsequent to April 7, Samuel Ackerman, Goldmuntz Bros. and Kleinman and Stein instituted other attachment suits in the city of New York, service of garnishment papers being had on the Fidelity & Casualty Company in New York, and constructive service, in each case, being had on Morris Singer in St. Louis. Kleinman and Stein, in addition to the suit filed on March 10, heretofore referred to, filed a second suit on June 11. Samuel Ackerman filed suits on April 9 and May 8, 1924; Goldmuntz Bros. filed suits on April 24, May 6, and June 9, 1924.

In the Kleinman and Stein suit, filed on March 10, judgment was rendered on May 23, 1924. In the other six suits filed by the parties, judgment was rendered on various dates; the last of said judgments being rendered on August 23, 1924, in the third suit of Goldmuntz Bros.

On December 17, 1924, a consent judgment was entered in the United States District Court in St. Louis in the suit of Morris Singer v. Fidelity & Casualty Company in the sum of $10,500, of which $2,100 was, by the terms of the judgment, paid to counsel for Morris Singer, and the provision made that the defendant should hold the sum of $8,400 to apply against the claims of the various New York attaching creditors; the various attachment suits being described in the judgment.

There was a condition as to the payment of said fund to the said judgment creditors as follows: " * * * That the defendant shall hold the said sum of eight thousand four hundred ($8,400) dollars to apply against such sums of money as shall be required to pay the final judgments recovered or to be recovered under or by virtue of the aforementioned described writs of attachment; that defendant shall be entitled to pay out of said eight thousand four hundred ($8,400) dollars any such judgments in the manner required by the laws of the state of New York under which said judgments upon such attachments shall be obtained."

On January 8, 1925, Kleinman and Stein, Samuel Ackerman, and Goldmuntz Bros. instituted their respective suits in aid of attachments against the Fidelity & Casualty Company in New York. On January 26, 1925, the Fidelity & Casualty Company filed the within bill of interpleader under the provisions of 39 Stat. 929 (Fed. Stat. Ann. [2d Ed.] 1918 Supp. p. 423 [Comp. St. § 991a]), paying the $8,400 into the registry of the court, and said company was, on order of court, discharged from further liability to the various parties.

The sheriff was made a nominal party because, under the New York attachment laws, the sheriff is a nominal party plaintiff in proceedings in aid of attachments. Further proceedings by the New York creditors to recover against the Fidelity & Casualty Company in New York were abated by the United States District Court and the parties required to set up their respective rights in this cause. This was done by them by way of answers.

[1] 1. The trustee attacks the attachment liens on the ground that the New York court did not have jurisdiction of the res, because the insurance claim was an unliquidated cause of action upon contract, and, being such, was not garnishable under the New York statutes; that it was not garnishable because the claim was unliquidated, and that there was a genuine dispute as to the liability of the Fidelity & Casualty Company to Singer. The one matter in dispute was

as to whether or not a robbery had taken place, and the amount of the robbery, if there was one. If a robbery had taken place, there was a liability for the amount of the robbery.

Under the New York statutes a cause of action arising upon contract is garnishable. Article 55 of the New York Civil Practice Act (Cahill 1924) § 916. It is a general rule held by the state courts, aside from the necessity of first complying with the condition of the policy requiring the assured to make proof of loss, and unless the claim is rendered uncertain by options reserved by the company, such, for instance, as the right to rebuild, that a claim for loss under an insurance policy is unquestionably subject to garnishment; and where the policy does not stipulate to the contrary, such a claim accrues, and is subject to garnishment immediately upon the occurence of the loss. 28 C. J. p. 164, § 204.

[2] Under the doctrine that a claim is sufficiently certain and liquidated to be subject to garnishment, where its amount may be ascertained by reference to some definite standard, it is generally held in the state courts that an unadjusted claim for loss under an insurance policy is subject to garnishment. 28 C. J. p. 165, § 207; Knox v. Protection Ins. Co., 9 Conn. 430, 25 Am. Dec. 33; Glens Falls Ins. Co. v. Hite, 83 Ill. App. 549; Hanover F. Ins. Co. v. Connor, 20 Ill. App. 297; Northwestern Ins. Co. v. Atkins, 3 Bush. (Ky.) 328, 96 Am. Dec. 239; Meridian Land, etc., Co. v. Ormond, 82 Miss. 758, 35 So. 179; Crescent Ins. Co. v. Moore, 63 Miss. 419; Reid v. Mercurio, 91 Mo. App. 673; Sexton v. Phœnix Ins. Co., 132 N. C. 1, 43 S. E. 479; Hays v. Lycoming F. Ins. Co., 99 Pa. 621; Girard F. & M. Ins. Co., v. Field, 45 Pa. 129; Franklin F. Ins. Co., v. West, 8 Watts & S. (Pa.) 350; Jagode v. Smalley, 10 Pa. Super. Ct. 320; West v. Franklin F. Ins. Co., 2 Clark (Pa.) 70, 3 Pa. Law J. 299; Field v. Insurance Co., 4 Phila. (Pa.) 286; Phœnix Ins. Co. v. Willis, 70 Tex. 12, 16, 6 S. W. 825, 8 Am. St. Rep. 566.

In the latter case the court, stating the reason for the rule, says: "The property having been destroyed by fire, the agreement to pay the policy was no longer contingent, but had become absolute by the happening of the event mentioned in the policy, subject to be defeated, however, by defenses pleaded and proven, as might be done in other cases of debt." This is also the rule in New York. Rinchey v. Stryker, 28 N. Y. 45, 51, 84 Am. Dec. 324; Mechanics' & Traders' Bank v. Dakin, 51 N. Y. 519; People ex rel. Cauffman v. Van Buren, 136 N. Y. 252, 32 N. E.

775, 20 L. R. A. 446; Heidelberger v. Heidelberger, 196 App. Div. 626, 187 N. Y. S. 864.

In Rinchey v. Stryker, supra, the court said: "The fact that attachment is issued * * * before the debt is conclusively established on which it is founded, and it may subsequently be shown by the defendant in the attachment that there was no such debt, is not a sufficient reason for holding that the attaching creditor cannot show that the property attached is in fact the debtor's. * * * *"

In the case of Mechanics' & Traders' Bank v. Dakin, supra, both the garnishee and the defendant denied any liability. The plaintiff claimed the bond and mortgage involved had been fraudulently transferred. The court held that the attachment creditor, after perfecting judgment and issuing execution, might maintain an equitable action to enforce the lien acquired by the attachment, having the transfer, if fraudulent, set aside, obtain the proceeds thereof and apply the same to the attachment lien; thus holding that the facts may be shown to establish the liability of the garnishee, who denies the indebtedness.

[3] The contingency which will prevent garnishment is not presented by the mere fact of denial by the garnishee of the obligation. The uncertainty contemplated by the law is one that conditions the obligation, rendering it uncertain in the sense that it may never become due or owing, the determination of that being contingent upon the happening of some future event. 28 C. J. "Garnishment," p. 130, § 172.

The court may take evidence and determine what the truth is as to whether or not the event determining the liability has or has not happened, and the mere denial of the indebtedness by the garnishee does not prevent garnishment. Rinchey v. Stryker, 28 N. Y. 45, 51; Mechanics' & Traders' Bank v. Dakin, 51 N. Y. 519; People ex rel. Cauffman v. Van Buren, 136 N. Y. 252, 32 N. E. 775, 20 L. R. A. 446; Heidelberger v. Heidelberger, 196 App. Div. 626, 187 N. Y. S. 864. In the case at bar the garnishee at first denied liability, but afterwards and before judgment was entered in the garnishment actions, admitted liability. Its indebtedness to Singer was definitely determined to be $10,500, by the consent judgment entered in the St. Louis suit.

[4] 2. The trustee urges that the New York attachment judgments are void, for the reason that the attachment plaintiffs did not comply with the New York statutes, in that the entry of the judgment in New York was

premature, having been entered before the bringing of action by the sheriff against the garnishee to reduce the garnishment debt to possession. Under the New York Civil Practice Act it is proper for judgment to be entered in the attachment cause prior to the bringing of action by the sheriff against the garnishee. Section 922(2), and section 969 (4), N. Y. Civil Practice Act; Castriotis v. Guaranty Trust Co., 229 N. Y. 74, 127 N. E. 900; Arkenburgh v. Arkenburgh, 114 App. Div. 436, 99 N. Y. S. 1127, affirmed 188 N. Y. 552, 80 N. E. 1104; Amburg v. M. L. Ins. Co., 32 Misc. Rep. 89, 65 N. Y. S. 424; Whitney v. Davis, 148 N. Y. 256, 262, 42 N. E. 661.

[5] The trustee also contends that the warrants of attachment and liens acquired thereunder were merged in the judgments entered in the attachment suits and that the attachment liens were thereby lost. A warrant of attachment is not annulled by the judgment, but remains alive until dissolved by order of the court or is paid. Castriotis v. Guaranty Trust Co., supra; section 953, N. Y. Civil Practice Act; Arkenburgh v. Arkenburgh, supra; Mechanics' & Traders' Bank v. Dakin, 51 N. Y. 519; Lynch v. Crary, 52 N. Y. 181; Appleton v. National Park Bank, 122 Misc. Rep. 248, 202 N. Y. S. 516; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122.

[6] Another and sufficient answer to the claimed errors and irregularities urged by the trustee against the New York judgments is that the court there had regularly acquired jurisdiction of the parties to the action and of the res by attachment, and had so acquired jurisdiction without fraud. Where the court of one state has acquired jurisdiction, and without fraud, its judgment is entitled to full faith and credit in the courts of every other state; irregularities or errors in the rendition of that judgment cannot be taken advantage of collaterally. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; 46 A. L. R. 441 (see notes and cases cited); Johnston v. Compagnie Générale Transatlantique, 242 N. Y. 381, 152 N. E. 121, 46 A. L. R. 435; Lucas v. Vulcan Iron Works (D. C.) 233 F. 823; Hanley v. Donoghue, 116 U. S. 1, 6 S. Ct. 242, 29 L. Ed. 535; Hampton v. M'Connel, 3 Wheat. 234, 4 L. Ed. 378; Cheever v. Wilson, 9 Wall. 108, 123, 19 L. Ed. 604; Cline v. Southern R. Co. (D. C.) 231 F. 238; Burkhardt v. Sanford, 7 How. Prac. (N. Y.) 329; section 520, N. Y. Civil Practice Act; Ledoux v. East River Silk Co., 19 Misc. Rep. 440, 44 N. Y. S. 489.

[7] 3. The final question presented for determination is whether the pendency of the action brought by Singer against the Fidelity & Casualty Company in the circuit court of St. Louis which was afterwards removed to the United States District Court, had the effect of ousting the jurisdiction of the New York court to entertain the attachment suits involved. The contention of the trustee, in which he was upheld by the lower court, is that, the moment Singer filed his complaint and the summons therein was served upon the defendant insurance company, the Missouri court, to use the language of the lower court, "so far appropriated the cause of action that there was not left in New York anything which could be attached or reached by warrant of attachment."

In other words, it is here assumed that the effect of the filing of said suit was to seize and draw to the Missouri court constructive possession of the res involved, the debt owing by the insurance company to Singer. If this assumption is correct, then the conclusion reached by the lower court is correct. It is clear that the Singer action against the insurance company is an action in personam only. The action merely involved a controversy over the question of the liability of the insurance company to Singer, and the purpose of the action was to determine such controversy and give judgment accordingly. "But a controversy is not a thing" and a controversy over a mere question of personal liability does not involve the possession or control of a thing; and the jurisdiction of the court in such an action is in no way impaired or interfered with by a subsequent action in a court of concurrent jurisdiction which does involve possession of the res. Kline v. Burke Const. Co., 260 U. S. 226, 230, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077, Ahlhauser v. Butler et al. (C. C.) 50 F. 705.

[8] It is well settled that the pendency of a suit upon a cause of action in a state court will not sustain a plea of lis pendens to a suit upon the same cause of action in the federal court; and the converse is also true, that the pendency of an action in the federal court will not sustain a plea of lis pendens to a suit upon the same cause of action in the state court. Kline v. Burke Constr. Co., supra; Ogden City v. Weaver (C. C. A.) 108 F. 564, 568.

[9] The rule is different where, after a suit is brought in the federal court affecting the custody of property, or at some stage of the proceeding may affect the custody of proper-

ty, a suit of like nature is subsequently brought in the state court, and vice versa. In such cases it is well settled that the court which first acquires jurisdiction of the res, actual or constructive, is entitled to proceed to effectuate the purpose of the action without let or hindrance on the part of any other court of co-ordinate jurisdiction. Ogden City v. Weaver (C. C. A.) 108 F. 564, 568; Kline v. Burke Const. Co., supra. For further cases illustrating the application of this rule, see Havner v. Hegnes (C. C. A.) 269 F. 537; Oppenheimer v. San Antonio Co. (C. C. A.) 246 F. 934; Wabash R. R. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67; Dickinson v. Willis (D. C.) 239 F. 171; Empire Trust Co. v. Brooks (C. C. A.) 232 F. 641; Berg v. Fid. & Cas. Co. (C. C. A.) 274 F. 311; Hickey v. Johnson (C. C. A.) 9 F.(2d) 498; Chillicothe Fur. Co. v. Revelle (C. C. A.) 14 F.(2d) 501.

[10] "It is only while the property is in possession of the court, either actually or constructively, that the court is bound, or professes, to protect that possession from the process of other courts." Buck v. Colbath, 70 U. S. (3 Wall.) 334, 342, 18 L. Ed. 257. See, also, Watson v. Jones, 80 U. S. (13 Wall.) 679, 715, 716, 20 L. Ed. 666.

The rule under consideration with its limitations, is stated in Kline v. Burke, 260 U. S. 226, 229, 43 S. Ct. 79, 81 (67 L. Ed. 226, 24 A. L. R. 1077), by Justice Sutherland, as follows:

"It is settled that, where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction, where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem, the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that, where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.

"This court in Covell v. Heyman, 111 U. S. 176, 182 [4 S. Ct. 355, 28 L. Ed. 390], said:

22 F.(2d)—35

" 'The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity it leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues.' * * *

"But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case. The rule, therefore, has become generally established that, where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded. * * *

"Prior to the decision in the instant case, as an examination of the foregoing authorities, and others which might be added, will show, the rule was firmly established that the pendency in a federal court of an action in personam was neither ground for abating a subsequent action in a state court nor for the

issuance of an injunction against its prosecution."

The case of Ahlhauser v. Butler et al., 50 F. 705, is directly in point. It appears in that case that B., a nonresident, brought suit in the federal Circuit Court against C., a resident, to recover moneys due. Pending that action and before trial, A., a resident, brought suit in the state court against B., and therein garnisheed C., as debtor of B. B. filed a petition for removal of the suit to the federal Circuit Court. The court held that the jurisdiction of the suit against C. in the federal court, being in personam only, did not deprive the said court (and the federal court on removal) of jurisdiction of the garnishment, which was a proceeding in rem. In delivering the opinion the court said:

"Here the one suit was to declare liability; the other, to subject that liability to satisfaction of another debt. It is true that the federal court, in assertion of its rightful jurisdiction, would not permit any action of the state court in the subsequent suit to stay its hand in declaring the debt, or in enforcement of satisfaction of it. But that is not denial of jurisdiction. It is subordination of jurisdiction. It does not follow that, because one court has obtained jurisdiction of the parties and the subject-matter of an action, another court of co-ordinate jurisdiction may not also acquire jurisdiction in another suit and over the same subject-matter. Thus the pendency of one suit would not abate a subsequent suit in another jurisdiction between the same parties for the same cause. Stanton v. Embrey, 93 U. S. 548, 554 [23 L. Ed. 983]; Insurance Co. v. Brune's Assignee, 96 U. S. 588 [24 L. Ed. 737]; Gordon v. Gilfoil, 99 U. S. 168, 178 [25 L. Ed. 383]. It is true that here, the suits remaining in different jurisdictions, the garnishees ought not to be charged. That is a rule of decision, not of jurisdiction."

In the case of Lowenstein v. Levy (C. C. A.) 212 F. 383, the court failed to differentiate between actions in personam and actions in rem in applying the rule under discussion, and assumed that the court drew to its possession the res, although the action was an action in personam only, brought to recover a loss under an insurance policy. The case is contrary to the great weight of authority and is not supported by some of the authorities cited therein. The court there cites, in support of the rule laid down by it, the case of Covell v. Heyman, 111 U. S. 176,

4 S. Ct. 355, 28 L. Ed. 390. In that case there was an actual seizure of personal property. In Wallace v. McConnell, 38 U. S. (13 Pet.) 135, 136, 10 L. Ed. 95, cited as supporting the rule laid down, it appears that, subsequent to the filing of the suit in the United States Circuit Court, attachment proceedings were instituted in the state court, and an attempt was made to abate the prior federal proceeding by the plea puis darrien continuance. The court held that the suit at bar was prior in time, and could not be abated by an action in another court. It was merely an action in personam, and was not interfered with by the attachment.

We think the court below erred in applying the rule in question, and we hold that the attaching creditors' claims are paramount and superior to the title of the trustee in bankruptcy. It appeared that the total amount of the judgments rendered in New York in the attachment proceedings exhausts the fund in court. There should be subtracted from the fund in court the costs of this case in the lower and also in this court, and the balance of the fund should be applied to the payment of said judgments in the order of the priority of the attachments, as follows:

(1) To Kleinman and Stein, date of service of attachment March 11, 1924, date of judgment May 23, 1924, $1,150.16.

(2) To Samuel Ackerman, date of service of attachment April 11, 1924, date of judgment June 12, 1924, $3,024.99.

(3) To Goldmuntz Bros., date of service of attachment April 29, 1924, date of judgment June 24, 1924, $1,261.35.

(4) To Samuel Ackerman, date of service of attachment May 8, 1924, date of judgment July 8, 1924, $585.95.

(5) To Goldmuntz Bros., date of attachment May 8, 1924, date of judgment July 10, 1924, $1,000.

(6) The balance left should be applied pro rata on the judgment of Goldmuntz Bros., date of attachment June 13, 1924, date of judgment August 23, 1924, amount of judgment $1,038.95, and the judgment of Kleinman and Stein, date of attachment June 13, 1924, date of judgment August 23, 1924, amount of judgment $400.55.

On the appeals of Samuel Ackerman, Goldmuntz Bros., and Kleinman and Stein, the decree is reversed.

On the appeal of John C. Tobin, as trustee, the decree is affirmed.